Peter CALLOVI and Judith Callovi, Plaintiffs,

v.

OLYMPIA & YORK BATTERY PARK CO., Defendant.

OLYMPIA & YORK BATTERY PARK CO., Third Party Plaintiff,

v.

CIVETTA, FALCO, FRANKI, a/k/a Civetta & Falco Construction Corp., and Vincent McCabe, Third Party Defendants.

85 Civ. 7934 (WK).

United States District Court, S.D. New York.

June 29, 1987.

Sylvia Miller, New York City, for plaintiffs; Chester A. Hahn, of counsel.

Sherman B. Kerner, Hogan, Jones & Parisi, P.C., New York City, for defendant.

John J. Tracy, John S. Zachary, P.C., Staten Island, N.Y., for third party defendants.

MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Peter Callovi ("Callovi"), a dockbuilder employed by third party defendant

Civetta, Falco, Franki, was injured while engaged in construction of a building owned by defendant. The injury occurred when a mat fell on plaintiff due to the lack of braces or stays to support it. Plaintiff Judith Callovi's cause of action is derivative. Pursuant to Fed.R.Civ.P. 56, plaintiffs move for summary judgment on the issue of liability on the ground that § 240(1) of the New York Labor Law applies; defendant cross-moves for an order that § 241(6) is the applicable law. A violation of § 240(1)—which requires the provision of stays, braces, hoists and other specific safety devices for the protection of workers—creates absolute liability, while § 241(6), a more general safety statute, permits introduction of evidence concerning the worker's own negligence in causing the injury.

The New York Court of Appeals has not addressed the question in dispute here—whether a fall from a height is required under § 240(1)—and the intermediate appellate courts are divided. For the reasons stated below, we conclude that a fall from a height is not a necessary element of a claim under § 240(1) and that plaintiffs' motion should be granted.

### FACTS

The following facts are drawn from the affidavit of plaintiff Peter Callovi filed in support of the instant motion. On the date of the accident, June 24, 1984, Callovi was employed as a foreman of dockbuilders on a building known as Tower "B" at the Battery Park City Commercial Center in Manhattan. His specific assignment was to work on the foundation of the building. Ralph Holt, superintendent of the project, directed Callovi and a helper named Ricardo Cortes to go to a particular area of the job site and set up what was necessary for the erection of a wall. To do this, a pre-fabricated temporary form known as a "mat" was erected. The mat consisted of four 12″ x 12″ timbers (solid beams, one foot square), each approximately 24 feet in length, which were bolted together to form a structure that was four feet high, 12 inches wide and 24 feet long. Metal rods protruded from an opening between two of the timbers at either end so that the mat could be lifted by a crane. The mat weighed three to four tons.

By means of hand signals, plaintiff directed third party defendant Vincent McCabe, who was operating the crane, to lower the mat to the point where it was to be used, approximately three feet from a concrete wall known as the guide wall, with the 12 inch width resting on the ground and rising vertically four feet.

In order to stabilize the mat, it was necessary to use stays and braces. Stays are 4″ x 4″ pieces of timber, three feet in length, placed on the ground between the mat and the guide wall. Braces are composed of stays to which a "fish plate" is attached. The fish plate is a piece of lumber one inch thick which extends approximately twelve inches beyond the end of the brace. Hence, the 4 x 4 beam rests between the wall and the mat, while the fish plate rests on top of the wall and the mat. The brace is held firmly in place by nailing it to the mat, and sometimes to the wall as well. There were no braces or stays available at the job site, nor were there tools or materials (lumber) for making the braces.

Plaintiff found some scrap wood in the vicinity and placed two or three pieces at the bottom of the mat to act as makeshift stays. Plaintiff and Cortes also picked up some scrap lumber which was approximately the proper length for braces but was not equipped with the fish plate device to make the form rigid. Meanwhile, the mat was being held by the crane. Plaintiff stood between the guide wall and the mat, and directed the crane operator to allow a little slack in the wire cable holding the mat, so that the upper part of the mat would lean toward the concrete wall and, by its own weight, temporarily hold the lumber in place. Plaintiff then directed Cortes to obtain chainsaws, lumber and nails from a nearby shanty in order to prepare proper braces and stays.

Vibrations from a bulldozer caused the temporary braces to fall. The mat tipped over, pinning plaintiff between the upper

edge of the mat and the guide wall. He suffered multiple fractures.

Neither defendant nor third party defendants submitted affidavits to rebut these facts.

## DISCUSSION

N.Y. Labor Law § 240(1) (McKinney 1986) provides:

All contractors and owners and their agents ... in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

■ When the failure to provide safety devices necessary for proper protection proximately causes the worker's injuries, § 240(1) imposes absolute liability upon the owner or contractor regardless of the injured worker's own negligence in causing the accident. *Zimmer v. Chemung County Performing Arts* (1985) 65 N.Y.2d 513, 521–2, 493 N.Y.S.2d 102, 105–6, 482 N.E.2d 898, 901–2. It is undisputed that Callovi was engaged in one of the enumerated activities and that the failure to provide proper stays and braces proximately caused his injury. The question we must resolve is whether § 240(1) benefits only those injured by a fall from an elevated height.[1] Such a requirement is nowhere mentioned in the language of the statute, but has been imposed by some courts. The New York Court of Appeals has never ruled on this question, and there is split of authority among the appellate divisions. The Fourth Department holds that a fall from a height is required, while the Third Department holds that it is not. The rule in the Second Department is unclear, and the First Department has never spoken on the subject.

In *DaBolt v. Bethlehem Steel Corporation* (4th Dept.1983) 92 A.D.2d 70, 459 N.Y. S.2d 503, the Fourth Department noted that § 240 has historically been used to protect workers at elevated heights from falls caused by defective safety equipment, and that all of the cases construing its provisions had arisen in that context. Since the section imposes a non-delegable duty, and such liability is generally imposed only to guard against inordinate dangers, the court concluded that a fall from a height is required. The Fourth Department reaffirmed the *DaBolt* rule in *Van Slyke v. Niagara Mohawk Power Corp.* (4th Dept.1983) 93 A.D.2d 990, 461 N.Y. S.2d 643, *aff'd on other grounds in part, appeal dismissed in part,* 60 N.Y.2d 774, 469 N.Y.S.2d 674, 457 N.E.2d 780. *Accord, Siragusa v. State of New York* (4th Dept. 1986) 117 A.D.2d 986, 499 N.Y.S.2d 533.

We cannot discern any clear rule in the Second Department. Defendant and third party defendant cite *Mack v. Altman's Stage Lighting Co.* (2d Dept.1984) 98 A.D.2d 468, 470 N.Y.S.2d 664, in support of their position. However, the holding of *Mack* was that the statutory violation did not proximately cause the injury; the discussion of the height requirement was simply dictum. A subsequent decision in the Second Department found § 240(1) applicable to a diver working on an underwater sewage pipe who was injured when his hand was caught between the pipe and some wire. *Kahn v. Gates Construction Corp.* (2d Dept.1984) 103 A.D.2d 438, 480 N.Y.S.2d 351. Since the diver neither fell from an elevated height nor was struck by an object falling from a height, *Kahn* suggests that the Second Department has

---

1. We need not address defendant's other arguments, relating to Callovi's alleged negligence, which derive from the assertion in defendant's Rule 3(g) statement that all necessary tools and materials were on the job site and available to plaintiff. Defendant failed to submit any affidavits from individuals with personal knowledge to support this assertion. It is axiomatic that a litigant opposing summary judgment may not rest on mere denials in order to raise a genuine issue of material fact requiring trial, but must come forward with some affirmative indication that his version of the facts is not fanciful. *E.g., Quinn v. Syracuse Model Neighborhood Corp.* (2d Cir.1980) 613 F.2d 438, 445. Accordingly, we conclude that there are no disputed issues of fact.

adopted a more expansive reading of the scope of protection afforded by § 240(1).

The Third Department, the most recent court to consider our question, expressly rejected the Fourth Department's narrow construction of the statute. *Dougherty v. State of New York* (3d Dept.1985) 113 A.D.2d 983, 493 N.Y.S.2d 654. The *Dougherty* court observed that Labor Law § 240(1) "is to be liberally construed to accomplish its beneficial purpose; this is, the better protection of workmen engaged in certain dangerous employments," 113 A.D.2d at 985, 493 N.Y.S.2d at 656. The court further reasoned that the Court of Appeal's summary affirmance of the Fourth Department's decision in *Van Slyke v. Niagara Mohawk Power Corp., supra,* should not be read to make a fall from a height a necessary element of a § 240(1) claim because a number of other explanations could be found for the *Van Slyke* court's holding that § 240(1) was inapplicable. One Justice dissented, and would have followed the rule in the Fourth Department, and what he deemed to be the Second Department rule, citing *Mack v. Altman's Stage Light Co., supra.* In a very recent opinion, the Third Department unanimously reaffirmed its broad interpretation of the statute. Citing the Second Department's decision in *Kahn v. Gates Construction Co., supra,* the court held that § 240(1) covered a worker who suffered a heart attack due to overstrenuous activity necessitated by the absence of hoisting equipment for transporting two 300–pound hydraulic jacks over a dirt surface and up a flight of stairs. *Gregory v. General Electric Co.,* 516 N.Y.S.2d 549 (App.Div.3d Dept.1987).

■ In our view, the *Dougherty* and *Gregory* cases in the Third Department are the most persuasive and comprehensive statements of New York law on the question before us, since they consider and analyze the previous decisions on the subject by other appellate courts. We are unpersuaded by defendant's contention that § 240(1) was intended to cover only activities involving ladders, scaffolding and heights because those are ultrahazardous situations. Several recent New York cases undercut the force of this argument. For example, in *Wright v. State of New York* (1985) 66 N.Y.2d 452, 497 N.Y.S.2d 880, 488 N.E.2d 810, the Court of Appeals (without discussing whether a fall from a height is necessary) held that § 240(1) covered a worker who fell only 7 feet from an unprotected scaffolding. Furthermore, § 240(1) has been held to apply to situations where a plank of wood from scaffolding fell on a worker. *Smith v. Jesus People* (3d Dept. 1985) 113 A.D.2d 980, 493 N.Y.S.2d 658. Neither of those situations strikes us as inherently more dangerous than the instant case, where a four foot high, three ton form toppled onto plaintiff.

Accordingly, we conclude that Labor Law § 240(1) applies to the facts of this case. Plaintiffs' motion for partial summary judgment on the issue of liability is granted, and defendant's cross motion is denied. A conference will be held on July 13, 1987 at 9:30 a.m. in courtroom 619 to discuss further proceedings in this case.

SO ORDERED.