■ CHARLES YAEGER et al., Appellants, v NEW YORK TELEPHONE COMPANY et al., Defendants, et al., Third-Party Plaintiffs. DOVER ELEVATOR COMPANY, Third-Party Defendant-Respondent.—Order of the Supreme Court, New York County (Martin Evans, J.), entered on October 13, 1987, which granted the motion by third-party defendant Dover Elevator Company for partial summary judgment pursuant to CPLR 3212 (e) on the ground that Labor Law § 240 (1) does not apply to the facts of this case, is affirmed, without costs or disbursements.

On January 7, 1981, plaintiff Charles Yaeger, who had been

employed by a subcontractor, third-party defendant Dover Elevator Company, of general contractor John Thatcher & Son, was working at a construction site at 1166 Sixth Avenue in Manhattan when he was injured in the course of erecting a truck elevator. At the time of the accident, plaintiff was at the bottom of the elevator shaft, known as the "pit", where he was engaged in attaching one piece of steel platform to a second piece that had already been connected to a channel and cross brace. These two sections of platform were suspended some 2 to 3 feet over plaintiff's head as he aligned the two pieces in order to bolt them together. The only object supporting the two portions of the platform, as well as the channel and cross brace, was a chain device called a "chain-fall", which purportedly had a lifting capacity of 1 to 2 tons whereas the platform itself supposedly weighed at least five tons. Consequently, the channel and cross brace bent and fell downward, causing the platform pieces to collapse into the pit and injure plaintiff.

It is the contention of third-party defendant Dover Elevator Company that section 240 (1) of the Labor Law does not apply in the instant situation since plaintiff was struck by a falling object while he was working at the bottom of an elevator shaft. In that regard, section 240 (1) provides that: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The dispute involved herein is whether Labor Law § 240 (1) covers only those employees operating at elevated heights or was intended to extend protection from falling objects even to persons working at ground level. Appellate courts have disagreed with respect to the scope of this statute such that the Third Department favors the expansion of section 240 (1) to include workers on the ground hit by falling objects or otherwise injured whereas the Fourth Department has expressed the contrary view, and the Second Department appears to have, at various times, espoused both positions.

Thus, in *Dougherty v State of New York* (113 AD2d 983), the Third Department held that defendant's failure to furnish a scaffold rendered it liable under Labor Law § 240 (1) when

claimant therein fell, sliding some 10 to 15 feet down a slope, as he was attempting to place a ladder under a bridge which he was engaged in repairing and renovating. Although defendant had previously erected a scaffold on the site, it had been removed prior to the time that claimant began his work. In another matter, *Gregory v General Elec. Co.* (131 AD2d 967, 968), the Third Department rejected what it characterized as defendants' "unreasonably restrictive interpretation of the statutory protection afforded" when it concluded that the failure to supply hoists could be considered a violation of Labor Law § 240 (1). Plaintiff in that case sustained injuries while employed as a sheet metal worker at a construction site. He and three other persons were instructed by their foreman to manually transport two hydraulic jacks over about 60 feet of dirt surface and up a flight of stairs. According to the court in *Gregory v General Elec. Co. (supra)*, section 240 (1) does not merely safeguard workers from the risks of falls or falling objects. Moreover, the Third Department, in *Region v Woodward Constr.* (140 AD2d 758), found that the provisions of Labor Law § 240 (1) were applicable where the decedent, while assisting another person in moving steel building materials known as purlins, was electrocuted when a cable attached to the crane boom which was being utilized to lift the purlins and move them to another location came into contact with the electric wires overhead. At the time of the accident, decedent was attempting to attach a hook suspended from the cable to the stack of purlins. In the opinion of the court therein, "[i]nasmuch as the crane was being used as a hoist to lift stacks of purlins * * * [t]he placement and operation of the crane under the electric lines without prior safety precautions clearly violated" the section in question *(supra,* at 760).

The Fourth Department, in contrast, has consistently determined that Labor Law § 240 (1) "is addressed to situations in which a worker is exposed to the risk of falling from an elevated work site or being hit by an object falling from an elevated work site" *(Siragusa v State of New York,* 117 AD2d 986, 987, *lv denied* 68 NY2d 602). Consequently, the court held that the statute was inapplicable where an employee who was standing on the platform of a tunnel-boring machine 12 inches above the floor of the tunnel was injured after being struck by rock falling from the ceiling of a sewer tunnel which was in the process of being constructed *(Fox v Jenny Eng'g Corp.,* 122 AD2d 532, *affd on other grounds* 70 NY2d 761). Similarly, the Fourth Department declined to invoke section 240 (1) in a situation in which a worker died from injuries suffered when,

during tree cutting and removal operations, he was struck by a tree trunk suspended from a crane and wire rope since this provision "has historically been employed to protect the safety of employees working on scaffolding and other elevated structures" *(Nagel v Metzger,* 103 AD2d 1, 10). In *DaBolt v Bethlehem Steel Corp.* (92 AD2d 70, *appeal dismissed* 60 NY2d 701), plaintiff was injured when a steel frame from a transfer table on a structure known as a separator, which was 30 feet high and 200 feet long, was prematurely put into action, causing the steel frame to crush his left hand. The court in that matter ruled that "inasmuch as plaintiff's injury did not result from a fall, subdivision 1 of section 240 is inapplicable to plaintiff's claim" *(supra,* at 75).

The Second Department, in *Mack v Altmans Stage Light. Co.* (98 AD2d 468, 473), in referring to section 240 (1) of the Labor Law, noted in dicta that "[a]s the Appellate Division, Fourth Department, recently observed, '[t]hat section benefits only those persons injured by a fall from an elevated height due to a lack of, or defective, safety devices designed to prevent such a fall' *(Van Slyke v Niagara Mohawk Power Corp.,* 93 AD2d 990, 991, aff'd in part, app dsmd in part 60 NY2d 774)". Yet, in a subsequent case, the Second Department, notwithstanding its statement in *Mack v Altmans Stage Light. Co. (supra),* decided that a down line, serving to transport equipment from the surface to the ocean floor where plaintiff, a commercial diver, was injured while participating in a project to construct an underwater outflow pipe, was a device within the meaning of Labor Law § 240 *(Kahn v Gates Constr. Corp.,* 103 AD2d 438). More recently, in a situation involving an injury suffered by a dockworker as he was unloading steel plates at a construction site, the Second Department held that plaintiff had raised an issue under Labor Law § 240 (1) concerning the adequacy of the means provided to unload the cargo of steel *(Gjertsen v Mawson & Mawson,* 135 AD2d 779).

The confusion relating to the proper construction of subdivision (1) of section 240 of the Labor Law no doubt arises from the fact that this provision does not expressly impose liability where an injury occurs to employees operating at an elevated height but merely requires that contractors and owners and their agents shall, in the specified circumstances, "furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give

proper protection to a person so employed". However, section 240, commonly known as the Scaffold Act, enumerates devices which all relate to work performed at elevated heights. Labor Law § 241, on the other hand, imposes a general obligation upon contractors and owners to provide a safe and reasonable place of employment where construction, excavation and demolition work is being performed.

In our judgment, Labor Law § 240 (1) must be directed at work which is especially hazardous because it concerns heights. Absolute liability is imposed by section 240 (1) upon contractors and owners in order to compel them to take special care for the safety of workers laboring under the ultrahazardous conditions which heights entail. Workers exposed to the usual dangers of construction are protected by Labor Law § 241. To interpret section 240 (1) in the manner urged by the dissent and adopted by the Third Department would, in effect, cause the protections provided by section 240 of the Labor Law to overlap or duplicate those accorded by Labor Law § 241. Moreover, it would wreak havoc upon the construction and insurance industries by imposing absolute liability for a myriad of common everyday work activities not involving heights, thus making owners and contractors insurers for injured workers. For these reasons, the approach which the Fourth Department has taken seems to be preferable; that is, section 240 should be invoked where an employee's injury is somehow related to work performed at heights whereas section 241 is applicable to ordinary construction work. Therefore, the order being appealed herein should be affirmed. Concur—Carro, J. P., Milonas and Wallach, JJ.

Asch, J., dissents in a memorandum as follows: Plaintiff Yaeger was an employee of the third-party defendant Dover Elevator Company, constructing a truck elevator which was to go from the ground floor of a building at 1166 Sixth Avenue to the basement. His task was to assemble the steel platform of the elevator. He was working in the pit or the very bottom of the elevator shaft, connecting a piece of steel platform to another piece he had previously installed. All that supported this second piece of platform at that time was an overhead chain device called a chainfall, a chain and pulley with a lifting capacity of 1 to 2 tons. The platform which this chainfall was holding up, however, weighed five tons. The first piece of platform installed earlier had *no* chainfalls and no supports or braces. A cross brace and a steel channel or beam running perpendicular to the direction of the platform also had no supports or braces. Plaintiff placed a bolt in the center

of the two pieces of platform to attach them to each other and then began to attach a second bolt to the two pieces. At this time, the channel and cross brace bent downward, and they and the platform fell into the pit, causing the platform to strike plaintiff in the head, back and shoulders, rendering him unconscious and causing severe injuries.

Plaintiff brought this action alleging, *inter alia,* a violation by defendants of the provisions of Labor Law § 240 (1). While comparative negligence is a defense under Labor Law § 241 (6), imposing a duty to provide a safe place to work generally, it is no defense to the nondelegable duty imposed under section 240 *(see, Long v Forest-Fehlhaber,* 55 NY2d 154). The IAS court granted third-party defendant's motion for partial summary judgment pursuant to CPLR 3212, finding that Labor Law § 240 (1) did not protect a worker standing on the ground when injured by a falling object. I disagree with that finding and, therefore, dissent from this court's affirmance of it.

Labor Law § 240 (1) provides in pertinent part:

"§ 240. Scaffolding and other devices for use of employees

"1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Third-party defendant Dover Elevator Company cites language used by the Court of Appeals in *Koenig v Patrick Constr. Corp.* (298 NY 313, 319) as authority for the proposition that a worker laboring at ground level, who is struck by a falling object, is not covered by section 240 (1): "A different case would be before us if the injured person were a passerby or a workman struck by a falling ladder; as to them—persons outside the class for whose special benefit the statute was designed—a violation might do no more than evidence negligence".

However, in *Koenig (supra),* the Court of Appeals held that a window cleaner, injured when a ladder on which he was working slipped and hurled him to the ground, need not show freedom from contributory negligence under section 240 of the

Labor Law. It based its holding in part on the language of the statute creating a duty of defendants to furnish or cause to be furnished equipment or devices which give proper protection. Thus, in the context of that case, a workman or passerby struck by a falling ladder would not come under the aegis of the statute as *persons for whom the equipment was to be furnished or provided.*

Here, however, we are faced with quite a different fact pattern. Plaintiff Yaeger was injured because defendants did *not* "furnish or erect, or cause to be furnished or erected * * * scaffolding, hoists, stays * * * slings, hangers, blocks, pulleys, braces * * * and other devices * * * as to give proper protection" to him. (Labor Law § 240 [1].) There is nothing in the language of section 240 or the legislative history, as far as I can determine, which indicates that failure to supply these devices will impose liability only when workers receive injuries from falls from elevated heights. *(See, Gregory v General Elec. Co.,* 131 AD2d 967; *Smith v Jesus People,* 113 AD2d 980; *Dougherty v State of New York,* 113 AD2d 983 [all 3d Dept].)*

Although the Fourth Department has held that the statute applied only where there was the risk of a fall *(Van Slyke v Niagara Mohawk Power Corp.,* 93 AD2d 990, *affd on other grounds* 60 NY2d 774; *DaBolt v Bethlehem Steel Corp.,* 92 AD2d 70, *appeal dismissed* 60 NY2d 701), it later held that: "The statute is addressed to situations in which a worker is exposed to the risk of falling from an elevated work site *or being hit by an object falling from an elevated work site"* *(Siragusa v State of New York,* 117 AD2d 986, 987 [emphasis added]). While the Second Department has indicated, in dicta, that it would engraft the requirement of a fall upon the language of the statute *(see, Mack v Altmans Stage Light. Co.,* 98 AD2d 468), it thereafter applied section 240 to the case of a diver working on the ocean floor whose hand was injured when it became entangled in wires attached to pipes being set into place on the sea floor by cranes on a barge *(Kahn v Gates Constr. Corp.,* 103 AD2d 438). This department, as well as the Court of Appeals, has never ruled on the issue.

In a well-reasoned and researched opinion, Judge Knapp of the Southern District of New York, considering a case which involved a worker injured when a mat of timbers fell on him due to a lack of braces or stays, found: "In our view, the *Dougherty* and *Gregory* cases in the Third Department are the most persuasive and comprehensive statements of New York law on the question before us, since they consider and analyze the previous decisions on the subject by other appellate

courts." *(Callovi v Olympia & York Battery Park Co.,* 663 F Supp 855, 858.)

"In *DeHaen v Rockwood Sprinkler Co.* (258 NY 350), a case concerning a similar statutory section dealing with open shafts, the Court of Appeals read the applicable statute in the manner we would read Labor Law § 240 (1). In *DeHaen,* a radiator fell down the shaft of an unprotected hoistway and killed a man below. [Chief] Judge Cardozo, writing for the court, stated that although the primary object of the statute was to protect workers from the hazard of falling into a shaft, '[w]e cannot say * * * that no other hazard was within the zone of apprehension' *(id.,* p 354). Rather, the Court of Appeals opined: 'A safeguard has been commanded, but without distinct enumeration of the hazards to be avoided. In the revealing light of experience the hazards to be avoided are disclosed to us as the hazards that ensued' *(id.,* p 355). Just as the statutory section in *DeHaen,* designed to protect against workers falling down open shafts, was interpreted to cover injuries occasioned when a radiator fell down a shaft, so should Labor Law § 240 (1) be construed to cover the situation where a defective scaffold falls on a worker and injures him". *(Smith v Jesus People, supra,* at 982-983.)

Plaintiff was working on the ground at a construction site, engaged in assembling an elevator by bolting pieces of a steel platform together while they were suspended over his head. There were no safety devices in place such as braces, or any scaffolding, to prevent these steel pieces from falling on him, and that is exactly what occurred. The factors under which plaintiff's injuries occurred fit, in my opinion, not only the spirit and purpose of Labor Law § 240 (1), but also are literally covered by its language.

Accordingly, I would reverse the order of the Supreme Court, New York County (Martin Evans, J.), entered October 13, 1987, which granted the third-party defendant's motion for partial summary judgment, and deny said motion.