■ MARTIN PETTERSON, Respondent, v MUSEUM TOWER CORP. et al., Appellants and Third-Party Plaintiffs-Appellants and Second Third-Party Plaintiffs-Appellants. BERLEY INDUSTRIES, INC., et al., Third-Party Defendants-Respondents; CEDAR PARK CONCRETE CORP., Second Third-Party Defendant-Respondent.— Judgment, Supreme Court, New York County (Andrew Tyler, J., and a jury), entered April 8, 1988, which granted plaintiff's motion for a directed verdict on liability, is reversed, on the law and on the facts, judgment vacated, motion is denied, and the matter is remanded for a new trial on the issue of liability, with costs and disbursements to abide the event.

On August 24, 1981, during the erection of a building known as the Museum Tower, located at 53rd Street, between 5th and 6th Avenues, New York County, Mr. Martin Petterson, who was employed as a machinist mover, was seriously injured as a result of a construction accident.

Thereafter, in March 1982, Mr. Petterson (plaintiff) commenced an action against the Museum Tower Corp., which was the owner of the accident site, and Leon D. DeMatteis Construction Corp. (DeMatteis), which was the general contractor (defendants), to recover damages for his injuries. Subsequently, defendants commenced two third-party actions against four subcontractors which worked at the jobsite.

Since all of the parties stipulated that the plaintiff's damages amounted to $183,000, the action proceeded to trial only on the issue of liability.

During the trial the evidence presented by the parties, in substance, indicated:

The accident occurred in the vicinity of the 54th floor roof level. In the middle of this floor was a permanent opening for cooling towers, which were approximately 12 feet high and extended upward from concrete pads on the floor below. This

opening, whose size was estimated by the witnesses as between 8 and 15 feet long and between 15 and 20 feet wide, comprised a large portion of the roof, whose size was approximately 75 by 100 feet. Surrounding the opening was a concrete parapet, which was approximately 12 to 30 inches high.

Plaintiff testified, in substance, that the opening was not covered by protective planking, there was no safety net underneath it, other than the low parapet, there was no railing around the opening, and he had not been furnished with either safety lines or safety belts to prevent him from falling into the opening. Furthermore, plaintiff testified that while he was walking to tighten a bolt on a derrick, he slipped on some concrete debris, which caused him to hit the back of the parapet, which was approximately 2 to 3 feet from the derrick, thereafter he flipped over it, went through the opening, and fell approximately 15 to 20 feet to the floor below, where he landed on some steel piping, injuring himself.

In contradiction to the testimony of plaintiff's witnesses that there was no railing or barricade, defendants' witnesses testified that an approximately 42-inch-high metal barricade or railing had been erected around the opening, which was repaired or replaced on at least two occasions as a result of having been knocked down, and that barricade was in place and undamaged 2 or 3 days before the accident occurred.

After both sides rested, the trial court, based upon Labor Law § 240 (1), granted plaintiff's motion for a directed verdict on liability, and severed the two third-party actions.

Labor Law § 240 (1) requires, in pertinent part, "All contractors and owners and their agents * * * [involved] in the erection * * * of a building * * * [to] furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangars, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed". The Court of Appeals held in *Zimmer v Chemung County Performing Arts* (65 NY2d 513, 524 [1985], *rearg denied* 65 NY2d 1054 [1985]) that this statute imposes absolute liability on an owner and contractor who fail to provide or erect safety devices which are needed to protect a worker if a worker sustains an injury which is proximately caused by such failure. Furthermore, it has been held that this statute requires an owner and contractor to provide safety devices "to protect [a worker] from an accidental fall through the opening in the roof" *(Linney v Consistory of Bellevue Refm. Church,* 115 AD2d 209, 210 [1985]).

Our review of the record indicates that the conflict in testimony between the plaintiff's and defendants' witnesses, as to whether the defendants had placed a barricade or railing around the opening in the roof, raises a triable issue of fact for the jury to determine as to whether defendants violated Labor Law § 240 (1) *(Ugarriza v Schmieder,* 46 NY2d 471, 475-476 [1979]). Based upon this analysis, we find that Trial Term erred in granting plaintiff's motion for a directed verdict on liability.

Accordingly, we reverse, deny plaintiff's motion and remand for a new trial.

We have considered the other points presented by the parties, and find them to be without merit. Concur—Ross, J. P., Carro, Asch and Rubin, JJ.

Smith, J., dissents in a memorandum as follows: Plaintiff, a 19-year-old construction worker, was hired by third-party defendant Associated Rigging and Hauling Corporation (Associated) to assemble the base of a derrick on the roof of a building under construction and owned by defendant Museum Tower Corporation. Defendant Leon D. DeMatteis Construction Corp. (DeMatteis), the general contractor, had various subcontractors, including Associated, working at the site.

The derrick was situated 54 stories above the ground and near an uncovered opening at least 15 by 20 feet in size. The opening was surrounded by a concrete parapet approximately 2½ feet high. While walking around the base of the derrick, plaintiff tripped, flipped over the parapet wall and fell into the opening, landing on some steel piping 15 to 20 feet below. No safety line, belt or other safety device had been provided to plaintiff.

At the trial both plaintiff and his supervisor testified that there was no railing or barricade other than the low parapet wall surrounding the opening. The defendants introduced evidence that 2 or 3 days prior to the accident there was in place a 42-inch railing surrounding the opening and that this railing previously had been "knocked down" and replaced. However, the defense witnesses who were on the roof at the time of the accident either did not see the railing or did not recall whether the railing was in place on the date of the accident.

Labor Law § 240 (1) requires that both the property owner and contractor be held absolutely liable for failure to provide scaffolding, hoists, ladders, braces, ropes and other devices so that workers will be given proper protection. This section is

directed at protecting workers subject to the ultrahazardous conditions which exist when working at heights. *(Yaeger v New York Tel. Co.,* 148 AD2d 308 [1st Dept 1989].) Thus, "[i]n order to prevail in a Labor Law § 240 action, a plaintiff need only establish that the statute was violated and that the violation was a proximate cause of his injury". *(Linney v Consistory of Bellevue Refm. Church,* 115 AD2d 209, 210 [3d Dept 1985].) In *Linney,* the Third Department held, in part, that plaintiff was entitled to summary judgment under Labor Law § 240 where the decedent had fallen to his death through an unprotected skylight opening.

In order to defeat the motion for a directed verdict, the defendants were required to come forward with evidence that a protective barricade or railing was in place on the date of the accident and was of sufficient quality to protect workers. Viewing the evidence in the light most favorable to defendants, the record discloses no conflict with plaintiff's assertion that no barricade or railing surrounded the opening on the date of the accident. At best, the testimony of defendants' witnesses indicates that a railing was in place 2 or 3 days before the accident and that the railing was of such quality and construction as to previously have been "knocked down".

Labor Law § 240 (1) requires not merely the construction of safety devices but construction in a manner capable of providing "proper protection" to workers. *(See, Hauff v CLXXXII Via Magna Corp.,* 118 AD2d 485, 486 [1st Dept 1986]; *Alston v Golub Corp.,* 129 AD2d 916, 917 [3d Dept 1987].) In *Hauff,* this court granted summary judgment to the plaintiff where a scaffold collapsed. In *Alston,* the Third Department granted partial summary judgment to the plaintiff where a scaffold he was standing on toppled over. This consideration of proper protection prompted the Court of Appeals to endorse Justice Mikoll's observation, in her dissent at the Appellate Division in *Zimmer v Chemung County Performing Arts* (65 NY2d 513, 524 [1985], *revg* 102 AD2d 993, 995 [3d Dept 1984]), stating: " '[i]f the state of the building art is such that no devices have yet been devised to protect workers operating at such heights in dangerous work, it is illogical to conclude, given the purpose of the statute, that the responsibility of owners and contractors is then negated' ".

Since the record indicates that no barricade or other safety device was in place immediately prior to plaintiff's fall and further leads to the conclusion that any safety device in existence was inadequate to prevent the accident, and since defendants offered no other explanation for the accident *(see,*

*Hauff v CLXXXII Via Magna Corp., supra,* at 486), a directed verdict was proper.

Finally, the majority's citation of *Ugarriza v Schmieder* (46 NY2d 471, 475-476) for the proposition that a conflict in the testimony here raises a triable issue for the jury to decide is inappropriate. In *Ugarriza,* the Court of Appeals determined that summary judgment should not be granted to the plaintiff, a passenger in a car driven by the defendant, where no affirmative act or omission constituting negligence had been alleged or proved. Thus, it is not a basis for reversing a directed verdict for the plaintiff after trial in a construction case where there is no evidence of the existence of a safety barrier at the time of the accident.