James **VIOLETTE** and Loretta Violette, Plaintiffs,

v.

**ARMONK ASSOCIATES, L.P.,** a New York Limited Partnership; Elmar Contracting Corporation, and Campbell Chain Co., Inc., Defendants.

**ELMAR CONTRACTING CORPORATION,** Third–Party Plaintiff,

v.

**MAJOR MACHINERY, INC.,** Third–Party Defendant.

No. 90 Civ. 4059 (RWS).

United States District Court, S.D. New York.

June 7, 1993.

Levy Phillips & Konigsberg by Alan J. Konigsberg, Audrey M. Perlman, New York City, for plaintiffs.

Langan & Levy by Joann T. Trezza, New York City, for defendants Armonk Associates, L.P., CMC Realty and Development, Inc., and Carol Management Corp.

Kral, Clerkin, Redmond, Ryan, Perry & Girvan by David P. Redmond, New York City, for defendants Campbell and Cooper.

F.V. Mina, P.C. by Jennifer Jaffee, New York City, for defendant-third-party plaintiff.

J. Russell Clune, P.C. by Richard D. Bentzen, Harrison, NY, for third-party defendant.

## *OPINION*

SWEET, District Judge.

The plaintiffs, James Violette ("Violette") and Loretta Violette ("Mrs. Violette") (collectively, the "Violettes") have moved for reargument of this Court's decision dated December 10, 1992, 808 F.Supp. 1060, pursuant to Local Rule 3(j), or, in the alternate, for certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). If upon reargument the Plaintiff's motion is granted, defendant Campbell Chain Co., Inc. ("Campbell"), a division of defendant Cooper Industries, Inc. ("Cooper"), has submitted an affirmation in opposition requesting the Court to sever the case against these two Defendants for a separate trial on the issues of liability. For the reasons given below, the motion to reargue is granted. Upon reargument, the Plaintiffs' motion for summary judgment is again denied and the Plaintiffs' motion pursuant to Section 1292(b) motion is also denied. Since the Plaintiffs' motion for summary judgment is again denied, this Court does not reach Campbell's request to sever the case.

### *The Parties*

Plaintiff James Violette was injured on November 10, 1988, when a chain (the "hoist chain") broke and the ripper fell upon the Plaintiff, causing serious injury. The hoist chain has been attached to a bulldozer in order to hoist the 10,600 pound ripper while Violette attached the ripper to a bulldozer in order to prepare the equipment for use in clearing a site for construction. He has brought claims for violations of New York State Labor Laws §§ 240 and 200, and for negligence and strict products liability. His

wife, Loretta Violette, sues for an additional claim based on loss of consortium. Both plaintiffs are residents of the state of Connecticut.

Defendant Armonk Associates, L.P. ("Armonk") is a New York partnership which was and is the owner of property known as the Dellwood Estate ("Dellwood Estate"), in the Town of New Castle, County of Westchester, New York. Defendant Carol Management Corp. ("Carol") is a New York corporation and a real estate developer which initiated the construction of Dellwood Estates. Defendant CMC Realty and Development, Inc. ("CMC") is also a New York corporation and successor to Carol.

Defendant Campbell, a North Carolina corporation and a division of defendant Cooper, is alleged to be the manufacturer of the defective hoist chain.

Defendant and third-party plaintiff Elmar Contracting Corp. ("Elmar") is a New York corporation and the general contractor for construction on Dellwood Estate.

Third-party defendant Major Machinery ("Major") is a Connecticut corporation which directly employed James Violette and which leased the bulldozer to Elmar.

### Prior Proceedings

The Plaintiffs commenced this action in July, 1990, to establish liability of the owner and contractors of his worksite under New York Labor Law § 240(1). Defendant Elmar filed a third-party complaint against Violette's employer Major in August 1990. The Plaintiffs moved for summary judgment against Armonk, Elmar, CMC & Carol, and Armonk, CMC, and Carol cross-moved against Elmar for indemnity. By an opinion dated December 10, 1992, familiarity with which is assumed, this Court denied the motion of the Violettes for summary judgment under Labor Law § 240(1) and granted the cross-motion of Armonk, CMC, and Carol. The Plaintiffs then filed this motion for reargument on December 21, 1992. Oral argument was heard on January 20, 1993, and the motion was considered fully submitted as of that date.

### Discussion

#### Standards for a Motion to Reargue

■ To be entitled to reargument under Local Rule 3(j), the moving party must demonstrate that the Court overlooked controlling decisions or material factual matters that were before the Court on the underlying motion. *Swan Brewery v. U.S. Trust*, 145 F.R.D. 40 (S.D.N.Y.1992); *Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n*, 624 F.Supp. 856, 857 (S.D.N.Y.1985). The standard for review is strict, because the provision for reargument is not design to allow wasteful repetition of arguments already briefed, considered, and decided. *Morgan Guaranty Trust Co. v. Garrett Corp.*, 625 F.Supp. 752, 756 (S.D.N.Y.1986).

■ The Plaintiffs argue that this Court overlooked the holding of the Court of Appeals in *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). They advance the theory that *Rocovich* and the cases which depend upon it, such as *Fitzgibbons v. Olympia & York Batter Park Co.*, 182 A.D.2d 1069, 582 N.Y.S.2d 870 (4th Dept.1992), holds that Labor Law § 240(1) applies to labor where *either* a worker *or* materials are elevated using any equipment enumerated in the statute, such as stays, hoists, slings and cables, even if the injured worker and all other materials were on the ground at the time of the accident. Although the Court cited to and quoted from *Rocovich* extensively in its prior opinion, it did not consider this theory. Therefore, the motion to reargue is granted, and the holding of *Rocovich* is reconsidered.

### Rocovich

The Violettes maintain that, prior to *Rocovich*, New York Courts had agreed that workers who were injured by falling off scaffolding or ladders were covered under Section 240(1), but that these courts were split over whether injuries caused by falling objects at construction sites should also be included. It is the Violette's position that *Rocovich* resolved the split by holding that falling objects were covered by Section 240(1). They cite only *Yaeger v. New York Telephone Co.*, 148 A.D.2d 308, 538 N.Y.S.2d 526, 527 (1st Dep't 1989), which does point

out that the Fourth Department required a "fall from a height." However, *Siragusa v. State,* 117 A.D.2d 986, 499 N.Y.S.2d 533 (4th Dept.1986) makes it clear this covers both objects falling from a scaffolding and the dangers to workers themselves of falling from a height. At any rate, despite the split, it was evident before *Rocovich* that a collapsing scaffolding, even if it collapsed upon a worker standing on the ground, was covered under Labor Law § 240(1). *See Callovi v. Olympia & York Battery Park Co.,* 663 F.Supp. 855 (S.D.N.Y.1987) (analyzing New York law in all four Departments to conclude that Section 240(1) covers injuries due to collapse of temporary construction lowered into place by crane; plaintiff's own fall from a height not required). *Cf. De Haen v. Rockwood Sprinkler Co.,* 258 N.Y. 350, 353, 179 N.E. 764, 765 (1932) (Cardozo, J.) (holding that Labor Law § 241 applied to protecting passers-by from falling objects as well as to protect construction workers):

> The chief object of this statute is to protect workmen from the hazard of falling into a shaft. We cannot say, however, that no other hazard was within the zone of apprehension [of the legislature]

*Accord, e.g.,* "We have held that the statute imposes a duty on the contractor and owner to provide safety equipment to protect workers from hazards related to elevating themselves or their materials at the work site," *Bilderback v. Agway Petroleum Corp.,* 185 A.D.2d 372, 372–73, 586 N.Y.S.2d 152 (3rd Dep't 1992); *Smith v. Jesus People (Love Inn),* 113 A.D.2d 980, 493 N.Y.S.2d 658 (3rd Dep't 1985) (logic in *De Haen* applicable to Section 240(1)).

Neither this Court's prior opinion nor the Court of Appeal's opinion in *Rocovich* is quite as simplistic as the Plaintiffs make them out to be. In its prior opinion, this Court held that Violette's work was part of the Dellwood Project Site Plan, but it did not involve the type of work and the concomitant dangers envisioned by Section 240(1). That opinion took its definition of what was covered by Section 240(1) from *Rocovich,* where the Court clarified the nature of the occupational hazards for which the Legislature intended to warrant the absolute protection of Section 240(1).

*Rocovich* reiterates "the accepted rule that all parts of a statute are intended to be given effect and that a statutory construction which renders one part meaningless should be avoided," *Id.* 78 N.Y.2d at 515, 577 N.Y.S.2d at 222, 583 N.E.2d at 935. Section 240(1), therefore, is read by *Rocovich* —and should be read by this court—in conjunction with other relevant sections of the labor law, notably Sections 200 and 241(6), more general provisions requiring owners and contractors to provide safe working conditions.

Section 200 is a codification of the common-law duty of a landowner to provide workers with a reasonably safe place to work, *Jock v. Fien,* 80 N.Y.2d 965, 967, 590 N.Y.S.2d 878, 880, 605 N.E.2d 365, 366 (1992); *Lombardi v. Stout,* 80 N.Y.2d 290, 294, 590 N.Y.S.2d 55, 57, 604 N.E.2d 117, 119, (1992); *Allen v. Cloutier Constr. Corp.,* 44 N.Y.2d 290, 299, 405 N.Y.S.2d 630, 633, 376 N.E.2d 1276, 1279 (1978). A plaintiff's claim under Section 200 is subject to all the usual defenses of negligence, comparative fault, contributory negligence by the plaintiff, and negligence and control by the contractor. Section 241(6) imposes a nondelegable duty on a general contractor and owner to provide safe and reasonable construction or demolition worksite:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein ...

Labor Law § 241(6) (McKinney 1986). A plaintiff's negligence may bar or reduce his recovery under this statute as well.

Section 240(1), by contrast, creates a more stringent statutory cause of action for strict liability against landowners, and does not require notice of a defect nor the exercise of supervisory control by the owner. Negligence on the part of the plaintiff cannot serve to bar or reduce the plaintiff's recovery. Section 240(1) provides as follows:

All contractors and owners and their agents ... who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Labor Law § 240(1) (McKinney 1986). Section 240(1) is known as "the Scaffolding Law," and 240(2) and 240(3) provide specifications which scaffolding is required to meet. The legislative history of 240(1) is not likely to be useful at this point; the law derives from the Labor Law of 1909, which in turn was a revision of the statute as originally passed in 1885.

The Court of Appeals defined the scope of this law in *Rocovich*, where the "appeal turns on a question that we have not yet fully addressed: the nature of those occupational hazards which the Legislature intended should warrant the absolute protection that the statute affords," *id.* 78 N.Y.2d at 513, 577 N.Y.S.2d at 221, 583 N.E.2d at 934. The plaintiff in *Rocovich* was removing and repairing insulation covering pipes on the roof of the defendant's power plant. At the time of the accident, an 18-inch wide and five-inch deep trough carrying a stream of hot oil ran the length of the roof, and the plaintiff sued the owner of the roof after he slipped and fell into it. He argued two theories for the application of section 240(1)—first, that there was some elevation-related risk inherent in his work, demonstrated by the simple fact that he fell, and second, that the slippery oil-covered surface of the roof and the presence of the trough represented a degree of hazard which brought it within the statute.

The Court of Appeals rejected both claims:

Plaintiff's proposed construction conflicts with the thrust of Section 240(1) in mandating devices having a specific purpose: the protection against risks due in some way to relative differences in elevation. Moreover ... adopting plaintiff's "degree of hazard" interpretation would have the effect of making Labor Law § 210(6)—the general provision requiring owners and contractors to provide safe working conditions—virtually useless.

*Rocovich*, 78 N.Y.2d at 515, 577 N.Y.S.2d at 222, 583 N.E.2d at 935. Instead, the Court stated, in language heavily relied upon by the Plaintiffs:

While Section 240(1) does not purport to specify the hazards to be avoided, it does specify protective means for the hazards' avoidance. The type of devices which the statute prescribes "shall be so constructed, placed and operated" (emphasis added) as to avoid the contemplated hazards are: "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices".... All entail a significant risk inherent in the particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positions or secured.... It is because of the special hazards in having to work in these circumstances, we believe, that the Legislature has seen fit to give the worker the exceptional protection that Section 240(1) provides.

*Id.* at 513–14, 577 N.Y.S.2d at 221–22, 583 N.E.2d at 934.

From this language the Plaintiffs argue that Section 240(1) is implicated whenever hoists, ropes, blocks or other lifting devices are employed. On the face of it, however, this language could apply to the plaintiff in *Rocovich* as well: a safety belt attached to a rope—not an unusual safety device for a worker on a roof—would have kept him from falling into the hot oil. However, *Rocovich* held that the plaintiff only had a cause of action under Section 241(6), not under the strict liability provisions of Section 240(1).

*Rocovich* held that it was not heights per se, nor hazards per se, but the hazards that come with a worksite that was elevated in some way: "elevation-related risks." The plaintiff in *Rocovich* attempted to argue that "a slip and fall, be it only a matter of inches ... should ... be deemed within section 240(1)," *Rocovich* at 514, 577 N.Y.S.2d at 222, 583 N.E.2d at 935. According to *Rocovich*,

then, the phrase elevation-related risks is not to be taken absolutely literally; after all, there are relatively few accidents which do not involve the force of gravity. Elevation-related risks refers, instead, to inherent gravity related risks incurred in a situation where normal gravity becomes more dangerous because some aspect of the work involves heights.

■ If the "elevation-risk" of *Rocovich* referred to gravity, and to gravity alone, the statute would become meaningless, and 240(1) would be an exception which swallowed the rule. The reasons for its exceptions must be respected. A fall of ten or fifteen feet may be dangerous, no matter what the circumstances, *see Jock v. Fien,* 80 N.Y.2d 965, 590 N.Y.S.2d 878, 605 N.E.2d 365 (1992) (plaintiff who fell 15 feet from upright steel mold did not have cause of action under section 240(1) because worker not engaged in construction work). But a fall from a collapsing scaffolding may be likely as well as dangerous: a scaffolding, unlike a steel mill, is a temporary structure, set up only to be taken down again. The temptation is not to make it too sturdy, so that it is cheaper and easier to take it apart. Section 240(1) exists to prevent the owner or contractor from building a scaffolding whose demolition comes all too easily or otherwise working at heights without taking adequate precautions. *See, e.g., Sardella v. City of Schenectady,* — A.D.2d ——, 597 N.Y.S.2d 827 (3rd Dep't 1993) (defendants asked plaintiffs not to secure ladder set up in driveway to ensure its quick removal); *Liverpool v. S.P.M. Environmental Inc.,* 189 A.D.2d 645, 592 N.Y.S.2d 339 (1st Dep't 1993) (after unsecured bar joists gave way, worker fell fifteen feet and was buried under layers of heavy metal roof docking).

This Court notes *Smith v. New York State Elec. & Gas Corp.,* 189 A.D.2d 19, 595 N.Y.S.2d 563 (3rd Dep't 1993), where allegations that a crane dragged a ball in such as way as to cause the ball to hit the Plaintiff was held to state a cause of action under Section 240(1). Because the crane was used to perform all aspects of the removal of the equipment, the court held, all aspects of the removal exposed the plaintiff and his coworkers to risks related to elevation differentials. The absence of any differentials in height between the plaintiff and the object which struck him renders this opinion an improper application of *Rocovich. Cf. Ruiz v. 8600 Roll Road, Inc.,* 190 A.D.2d 1030, 594 N.Y.S.2d 474, 475 (4th Dep't 1993) ("Because the fatal injuries plaintiff's decedent sustained were not the result of a fall from an elevated work site or from an object falling from an elevated work surface, Supreme Court properly granted summary judgment dismissing plaintiff's claims based upon a violation of Labor Law § 240(1).")

In the case at bar, the Plaintiff was connecting two pieces of equipment at ground level. In the process of doing so, he crawled under one of them. "The mere fact that a worker was struck by a falling object does not establish a violation of Labor Law Section 240(1)," *Carringi v. International Paper Company,* 184 A.D.2d 137, 139, 591 N.Y.S.2d 600, 602 (3rd Dep't.1992) (holding that ground-level assembly of crane where crane cable was dislodged and struck plaintiff on the head did not implicate Section 240(1)). This risk must be "inherent in elevated worksites," *Jock v. Fien,* 80 N.Y.2d at 968, 590 N.Y.S.2d at 880, 605 N.E.2d at 367.

■ The Plaintiffs argue that the cases which govern their claims are *Oden v. Chemung County Indus.,* 183 A.D.2d 998, 583 N.Y.S.2d 854 (3rd Dep't 1992) and *Fitzgibbons v. Olympia & York Battery Park Co.,* 182 A.D.2d 1069, 582 N.Y.S.2d 870 (4th Dep't 1992). In *Oden,* the plaintiff was injured when a small hydraulic crane apparently struck and caused a vertical steel support column from which a catwalk had just been removed to fall. The opinion does not say whether the plaintiff was standing on the ground at the time or not. The court found for the plaintiff because the:

demolition involved contemplated hazards related to the effects of gravity inherent in the particular task being performed because of the lower elevation level of plaintiff's location and the higher elevation of the column to be demolished (*see, Rocovich v. Consolidated Edison....*) The steel column, 12 inches in diameter and 20 feet in height, was left unsecured and essential-

ly free standing without any protective devices after the catwalk was cut away and lifted free by the crane. It matters not whether the column fell as a result of being struck by the crane or because of its own instability.

*Oden* 183 A.D.2d at 999, 583 N.Y.S.2d at 857. The test is not talismanic "effects of gravity" or the use of certain devices, but the "effects of gravity inherent in the particular task" of construction or demolition work which involve elevated worksites. Here the determining factor was not gravity *per se* but a natural result of an "elevated worksite": the tendency not to secure a half-dismantled catwalk because of the knowledge that the remaining portion would be taken apart soon anyway.

Although the opinion in *Fitzgibbons* is brief in comparison with the one in *Oden*, the same logic is apparent. A metal angle attached to a cable and chain fell and struck a hoist operator. In *Fitzgibbons*, the Court simply states that Section 240(1) "is designed to protect workers, not only against the risk of falling from elevated heights, but also against the risk of being struck by falling objects," at 1069, 582 N.Y.S.2d 870, the opinion makes it clear that the plaintiff could recover because the accident happened in the course of the construction with its typical hazards of temporary structures and scaffolding. In the case at bar, Violette was simply not engaged in the type of hoisting activity or elevated work envisioned by the statute.

Finally, the Plaintiffs now contend that the pre-*Rocovich* cases relied upon by this Court were effectively overruled by that case. The Court of Appeals stated that it considered issues "not yet fully addressed," not a reconsideration and rejection of certain issues. One of them has been criticized by the New York Court of Appeals since that Opinion, and accordingly this opinion does not rely on it: *Yaeger v. New York Telephone Co.*, 148 A.D.2d 308, 538 N.Y.S.2d 526 (1st Dept.1989) which has been criticized by *Groves v. Land's End Housing Co.*, 80 N.Y.2d 978, 980, 592 N.Y.S.2d 643, 644, 607 N.E.2d 790, 791 (1992). In *Groves*, the Court of Appeals states that *Rocovich* made it clear that the

Labor Law § 240(1) applies not simply "where the work is performed at heights but where the work involves risks related to differences in elevation," at 980, 592 N.Y.S.2d at 644, 607 N.E.2d at 791. This of course is consistent with *Rocovich*, where the plaintiff could not recover simply because he was working on the roof, and with *Alfieri v. New York City Transit Auth.*, — A.D.2d —, 593 N.Y.S.2d 794 (1st Dep't 1993) ("[T]he court properly declined to charge the jury with respect to Labor Law § 240(1) as the hazards in the within case, the purported electrical shock and burns, are unrelated to the elevation of the subway platform roof on which plaintiff was walking").

*Mack v. Altmans Stage Lighting Co., Inc.*, 98 A.D.2d 468, 470 N.Y.S.2d 664 (2d Dept. 1984) is still good law, most recently cited by the Honorable Pierre N. Leval in an unpublished opinion filed November 19, 1992 (*Transamerica Ins. Fin. Corp. v. Fireman's Fund Ins. Co.*, 1992 WL 350800 (S.D.N.Y. Nov. 19, 1992)). *Litizia v. Jonathan Woodner Co.*, 150 A.D.2d 274, 541 N.Y.S.2d 429 (1st Dept.1989) was not effectively overruled by *Rocovich*: the court simply held that an injury from piece of lumber falling from a worksite where a subcontractor was stripping concrete columns on the fourteenth floor "validly stated a claim against the general contractor predicted on the violation of Section 240(1)":

> The statute requires all contractors to provide scaffolding and other devices to give proper protection to workers engaged in erecting, demolishing, repairing or altering a building. No scaffolding or other protective device was in place at the rear of the site when respondent was injured.

*Litizia*, 150 A.D.2d at 274, 541 N.Y.S.2d at 430.

Other cases cited in the earlier Opinion have been cited by New York courts within the past year. *Nagel v. Metzger*, 118 Misc.2d 441, 460 N.Y.S.2d 700 (Sup.Ct. Erie Cty. 1983) has been relied on by *Leon v. J & M Peppe Realty Corp.*, — A.D.2d —, 596 N.Y.S.2d 380 (1st Dep't 1993) and *Ruiz v. 8600 Roll Road, Inc.*, — A.D.2d —, 594 N.Y.S.2d 474 (1993). *Siragusa v. State*, 117 A.D.2d 986, 499 N.Y.S.2d 533 (4th Dept.1986)

in fact has been cited by *Fitzgibbons,* 182 A.D.2d at 1069, 582 N.Y.S.2d at 870, a case which the Plaintiffs maintain require this Court to decide in their favor.

As the Plaintiffs point out, *Rocovich* does not require the plaintiff to be elevated; it merely requires his injury to be related to the hazards of gravity inherent in work which involves differentials in heights. In the case at bar, the bulldozer in question and the assembly of the ripper to the bulldozer took place on the ground, while the equipment was being assembled to be used in clearing a site. While an aerial basket truck has been held to be the functional equivalent of a ladder, a truck itself is not (*Salzler v. New York Telephone Co.,* —— A.D.2d ——, 596 N.Y.S.2d 263 (4th Dep't 1993)), and neither is this bulldozer. Attaching the ripper to the bulldozer, therefore, is simply not an elevation-related risk within the meaning of *Rocovich.* For this reason, upon reargument, the Plaintiffs' motion is again denied.

### Motion for Certification for Interlocutory Appeal

The Plaintiffs have also made a motion to certify this question for interlocutory appeal pursuant to Section 1292(b). That section provides, in part:

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b) (West Supp.1993).

The Plaintiffs contend that the dispute over the applicability of Labor Law § 240(1) involves a controlling question of law as to which there may be substantial ground for a difference of opinion, justifying an interlocutory appeal. Unfortunately for the Plaintiffs, none of the New York state courts cited above seem to think so. The Plaintiffs have not cited any cases which refer to the law as being unsettled or even to any disagreements in interpretation among the courts. Since the New York courts do not describe differences in the interpretation of Labor Law Section 240(1), we refuse to find such, and accordingly the motion is denied.

### Conclusion

Plaintiffs' motion for reargument is granted and upon reargument, the Plaintiffs' motion for summary judgment under Labor Law § 240 is again denied. Plaintiffs' motion for certification for an immediate interlocutory appeal is denied. Since the Plaintiffs' motion for reargument has been denied, this Court does not consider the affirmation in opposition of defendants Campbell and Cooper to sever their case for a separate trial on liability.

It is so ordered.