MILAGROS RODRIGUEZ, on Behalf of Herself, Her Son, BENJA-MIN LARA, an Infant, and All Others Similarly Situated, et al., Appellants-Respondents, and DIANE LENIHAN, on Behalf of Herself, Her Son, JONATHAN LENIHAN, an Infant, and All Others Similarly Situated, Intervenor-Appellant-Respondent, v STEPHEN JOSEPH, as Commissioner of Health of the City of New York, et al., Respondents-Appellants.

First Department, August 3, 1989

APPEARANCES OF COUNSEL

*Matthew Diller* of counsel *(Janet Sabel* with him on the brief; *John E. Kirklin,* attorney), for appellants-respondents and intervenor-appellant-respondent.

*John Hogrogian* of counsel *(Pamela Seider Dolgow* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondents-appellants.

**OPINION OF THE COURT**

MILONAS, J.

Plaintiffs herein are parents of kindergarten-age children who have commenced the instant action for a declaratory judgment invalidating a citywide waiver granted by the Commissioner of Health to the Board of Education exempting it from compliance with section 47.11 of the New York City Health Code, which provides in pertinent part that:

"(a) A teacher qualified pursuant to section 47.09 (b) shall be in charge of each group of no more than: * * *

"(3) Twenty children, if the children are four years and over and under five years of age; or,

"(4) Twenty five children, if the children are five years and over and under six years of age.

"(b) In addition to a teacher qualified pursuant to section 47.09 (b), an assistant teacher shall be provided for each group of children when: * * *

"(3) The group has more than 12 children four years and over and under five years of age; or,

"(4) The group has more than 15 children five years and over and under six years of age."

While the foregoing section permits intermingling of children of different ages in one group, the supervision requirements applicable to the age of the majority of the children therein pertain (NY City Health Code § 47.11 [d]). The power to add, alter, amend or repeal any regulations contained in the Health Code is vested in the Board of Health (NY City Charter § 558 [b], [f]). However, pursuant to New York City Health Code § 45.21, "[w]hen the strict application of any provision of this article or Articles 47, 49 or 51 presents practical difficulties, or unusual or unreasonable hardships, the Commissioner in a specific instance may modify the application of such provision consistent with the general purpose and intent of these articles and upon such conditions as in his

opinion are necessary to protect the health of the children."
Except for the limited authority granted to the Commissioner
of Health to modify "in a specific instance" the provisions of
the enumerated articles, the enactment or amendment of any
rule or regulation of the Department of Health must, in
common with that of other municipal agencies, be in accor-
dance with the procedure set forth in the New York City
Charter (see, NY City Charter former § 1105), which mandates
that the public be accorded notice and an opportunity to be
heard.

Prior to the fall of 1983, when the New York City Board of
Education established all-day kindergarten classes in its pub-
lic elementary schools, such classes were a mixture of half-day
and all-day sessions. In the 1983-1984 school year, about
59,000 children were enrolled in all-day kindergarten classes
with the average class size being 27 children. In 1984-1985,
some 59,100 children were attending kindergarten, and the
average class consisted of approximately 25 children. Assisting
the teachers in some 2,300 classes were about 440 full-time
and part-time paraprofessionals. The following school year,
1985-1986, about 59,700 children were in kindergarten, and
the average class size contained 24.8 children. There were
some 190 full-time and part-time paraprofessionals assigned to
aid the teachers in approximately 2,400 classes. In the 1986-
1987 school year, 62,636 children were enrolled in kindergar-
ten, and the average class size was about 24.5 children. Of
2,548 classes, only 293 were serviced by full-time paraprofes-
sionals.

On December 23, 1985, Nathan Quinones, then Chancellor
of the Board of Education of the City of New York, wrote to
David Sencer, who was at the time the New York City
Commissioner of Health, requesting an exemption of the all-
day kindergarten program in the public schools from the
requirements of New York City Health Code § 47.11. Although
Chancellor Quinones asserted numerous arguments in support
of the waiver, it appears that budgetary considerations were
the paramount reason for the inability of the Board of Educa-
tion to conform to the class size and staffing dictates of New
York City Health Code § 47.11. On January 3, 1986, Commis-
sioner Sencer informed Chancellor Quinones that he was
granting a waiver with respect to "the full day kindergarten
program provided by the New York City Board of Education
in public elementary schools for any child whose fifth birthday
falls within the calendar year of admission."

At the outset, it should be noted that it is undisputed that the Board of Education has been operating many kindergarten classes in violation of both the student size limit and staffing mandates of New York City Health Code § 47.11. In challenging the blanket waiver given by the Commissioner of Health to the Board of Education for its kindergarten classes, plaintiffs allege, in part, that this waiver amounts to an amendment of the New York City Health Code since it was not fashioned for a "specific instance" as required by New York City Health Code § 45.21; that the Commissioner, therefore, lacked the authority to permit the exemption in question; and that only the entire Board of Health, acting pursuant to the procedures outlined in the City Charter, could properly effect such a change in the Health Code. There is considerable, even compelling, merit to plaintiffs' position.

In denying the parties' respective motions for summary judgment, the Supreme Court stated that "[d]efendants contend that had the waiver not been granted, compliance with the waived provisions would cause practical difficulty to the Board of Education in terms of cost. Defendants further assert that in his letter to Commissioner Sencer requesting the waiver, Chancellor Quinones stated that if a waiver were not granted 'it would become necessary to discontinue or severely curtail free public all day kindergarten in New York City.' This allegation raises an issue of fact as to whether the waiver granted by Commissioner Sencer was authorized under the circumstances." Yet, the grounds for the waiver are irrelevant. Even assuming that Chancellor Quinones had good cause to ask for the exemption and Commissioner Sencer's reason for granting it was equally commendable, the fact remains that the matter involved herein is simply whether a citywide waiver for all public schools can be deemed a "specific instance" under New York City Health Code § 45.21. If it cannot, then the most praiseworthy motives will not operate to provide authority to the Commissioner which he otherwise lacks.

In contrast to the New York City Charter's delegation to the Board of Health the general power to add, alter, amend or repeal any of the rules and regulations in the Health Code (NY City Charter § 558 [b], [f]), the Commissioner's authority pursuant to New York City Health Code § 45.21 is narrowly circumscribed. Thus, the Commissioner may modify application of the code only in a "specific instance" which "presents practical difficulties, or unusual or unreasonable hardships"

and is "consistent with the general purpose and intent of these articles and upon such conditions as in his opinion are necessary to protect the health of the children." In granting his blanket exemption, the Commissioner simply negated a decision by the Board of Health that the health and safety of kindergarten students in the public schools demands certain limits on class size and student/teacher ratios. Accordingly, while these limits would continue to be essential for kindergarten students in private schools, the welfare of public school students would no longer necessitate such restrictions. In effect, what the Commissioner's action accomplished was to create two separate categories of kindergarten children, those in the public schools and those in private schools. Rather than being an example of a modification in a narrowly defined "specific instance", the Commissioner of Health, by allowing the waiver, engaged in his own form of rule making. Consequently, he has made a policy determination, nowhere authorized by the Board of Health, that the health and safety standards for public school children may be lower than those who attend private schools, and he has, moreover, done so without the requisite finding of unusual or unreasonable hardships.

Certainly, the authority to grant a waiver in a specific case may not be applied so broadly as to effectively undermine the general rule (see, Matter of Douglaston Civic Assn. v Klein, 51 NY2d 963; Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269; Matter of Levy v Board of Stds. & Appeals, 267 NY 347). A waiver in a "specific instance" is exactly what it is commonly understood to mean. In that regard, it is settled that the language of a statute or regulatory provision is to be construed according to the ordinary and plain sense of its words (see, We're Assocs. Co. v Cohen, Stracher & Bloom, 65 NY2d 148; Sega v State of New York, 60 NY2d 183; Riegert Apts. Corp. v Planning Bd., 57 NY2d 206; Shoreham-Wading Riv. Cent. School Dist. v Town of Brookhaven, 107 AD2d 219, appeal dismissed 65 NY2d 990). To define the term "specific instance" to encompass every kindergarten class in the entire public school system of the City of New York requires that the plain meaning of these words be rejected in favor of a strained interpretation that would enable the Board of Education to avoid compliance with a Health Code regulation which it considers too expensive to implement. However, the proper procedure to obtain relief is for the Chancellor to appeal to the Board of Health instead of the Commissioner, who clearly

does not possess the power to grant a widespread dispensation from the requirements of the Health Code.

Order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on December 22, 1987, which granted plaintiffs' motion for intervention by Diane Lenihan as a party plaintiff, denied the motion for class certification without prejudice for renewal after precertification discovery and denied the parties' respective motion and cross motion for summary judgment, should be modified on the law to the extent of granting plaintiffs' motion for partial summary judgment with respect to the second, third and fourth causes of action declaring that the respondent Commissioner of Health is without authority to approve a citywide waiver of compliance with section 47.11 of the New York City Health Code, and otherwise affirmed, without costs or disbursements.

Sullivan, J. P., Asch, Wallach and Rubin, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 22, 1987, unanimously modified, on the law, to the extent of granting plaintiffs' motion for partial summary judgment with respect to the second, third and fourth causes of action declaring that the respondent Commissioner of Health is without authority to approve a citywide waiver of compliance with section 47.11 of the New York City Health Code, and otherwise affirmed, without costs and without disbursements.