### James VIOLETTE and Loretta Violette, Plaintiffs,

v.

### ARMONK ASSOCIATES, L.P., a New York limited partnership; Elmar Contracting Corporation; Campbell Chain Co., Inc.; CMC Realty and Development, Inc. and Carol Management Corp., Defendants.

### ELMAR CONTRACTING CORPORATION, Third–Party Plaintiff,

v.

### MAJOR MACHINERY, Third–Party Defendant.

### No. 90 Civ. 4059 (RWS).

United States District Court, S.D. New York.

Dec. 10, 1992.

---

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, Audrey M. Perlman, of counsel), for plaintiffs.

Langan & Levy, New York City (Joann T. Trezza, of counsel), for defendants Armonk Associates, L.P., CMC Realty and Development, Inc. & Carol Management Corp.

F.V. Mina, P.C., New York City (B. Jennifer Jaffee, of counsel), for defendant/third-party plaintiff.

## OPINION

SWEET, District Judge.

The plaintiffs, James Violette ("Violette") and Loretta Violette ("Mrs. Violette") (collectively, the "Violettes") have moved for summary judgment against defendants Armonk Associates, L.P. ("Armonk"), CMC Realty and Development, Inc. ("CMC"), Carol Management Corp. ("Carol") and Elmar Contracting Corp. ("Elmar") to establish liability of the defendants under New York Labor Law § 240(1). Defendants Armonk, CMC, and Carol have cross-moved against Elmar for indemnity. For the reasons set forth below, the motion of the Violettes is denied, and the cross-motion of Armonk, CMC, and Carol is granted.

### Prior Proceedings

This action was commenced in July, 1990, arising out of an accident on November 10, 1988 injuring Violette. The motions and cross-motions were argued and marked submitted on June 18, 1992.

### The Facts

Carol intended to develop a property on Sheather Road in Armonk to be called Dellwood Estates on which condominiums were proposed to be built. In the course of the project, on April 7, 1987, Carol sold the property to Dellwood Associates.

CMC Realty and Development Corp., presumably under a lease from Dellwood Associates, undertook the construction of the condominiums and entered into a contract on August 10, 1988 with Elmar as general contractor to provide site preparation. A provision of the Contract for Construction indemnified CMC and its agents.

On November 10, 1988 Elmar rented a bulldozer and ripper from the third party defendant Major Machinery ("Major") to break ground and rocks in connection with the proposed excavation. The bulldozer and ripper were brought to the property by Major, and Violette, an employee of Major, undertook to attach the ripper, which weighed 10,600 pounds, to the bulldozer. In order to lift the ripper into position for attachment, Violette asked assistance from Elmar which provided a track loader to lift the ripper.

The bucket of the track loader was attached by a chain manufactured by defendant Campbell Chain Co., Inc. ("Campbell") to the ripper. The track loader hoisted the ripper off the ground and into position for attachment to the bulldozer by aligning and seating the pin attachments.

Violette was under the ripper after it was hoisted in order to accomplish the attachment. The chain broke, the ripper fell on Violette, who suffered injuries. No other hoists, stays, blocks, slings, or cables were involved.

*The Issue*

New York Labor Law § 240(1) provides as follows:

> All contractors and owners and their agents ... who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Labor Law § 240(1) (McKinney 1986).

■ Section 240(1) is known as "the Scaffolding Law," and was enacted in order to protect workers who were working at elevated heights at a construction site. *Clinquennoi v. Michaels Group*, 178 A.D.2d 839, 577 N.Y.S.2d 550 (3rd Dept. 1991).

The issue is thus presented as to whether § 240(1) is applicable to the facts here presented.

*Section 240(1) Is Not Applicable*

■ Violette was on the site pursuant to his employment. *Mordkovsky v. V.C.V. Dev. Corp.*, 76 N.Y.2d 573, 561 N.Y.S.2d 892, 563 N.E.2d 263 (1990), but was not employed in the sort of activity contemplated by the scaffolding law, the erection, demolition, repairing, etc. of "a building or structure."

The Court of Appeals recently upheld a verdict for a plaintiff who was working on a telephone pole, holding that he was working on a "structure." The Court defined "a structure" as "any production or piece of work artificially built up or composed of parts jointed together in some definite manner" (*Lewis–Moors v. Contel of N.Y., Inc.*, 78 N.Y.2d 942, 943, 573 N.Y.S.2d 636, 578 N.E.2d 434 (1991), *citing Caddy v. Interborough R.T. Corp.*, 195 N.Y. 415, 420, 88 N.E. 747 (1909)). There, the Court of Appeals concluded that a telephone pole with attached hardware, cable and support systems constituted a structure (*Lewis–Moors, supra*, 78 N.Y.2d at 943, 573 N.Y.S.2d 636, 578 N.E.2d 434).

In *Ploof v. B.I.M. Truck Serv. Inc.*, 53 A.D.2d 750, 751, 384 N.Y.S.2d 521 (3d Dept. 1976), plaintiff's decedent was a workman unloading concrete pallets from a truck onto an elevated platform, using trolley cable, which snapped, killing him. Plaintiff was held to have stated a cause of action pursuant to § 240(1) of the Labor Law because decedent was within the class of workers protected by the statute, those "working on any structure who use dangerous equipment, as defined in the statute."

While "structure" has been broadly defined, a bulldozer and ripper do not in common parlance constitute a structure,

which, by the rationales set forth above, has a certain amount of permanency; the bulldozer is equipment or machinery more similar to the truck in *Vincent v. Dresser Indus.*, 172 A.D.2d 1033, 569 N.Y.S.2d 296 (4th Dept.1991). *See Dougherty v. State*, 113 A.D.2d 983, 985, 493 N.Y.S.2d 654 (2d Dept.1985).

■ Even though Violette was involved in the site-clearing process, § 240(1) does not automatically apply to an employee injured or killed while clearing a construction site. *Nagel v. Metzger*, 103 A.D.2d 1, 478 N.Y.S.2d 737 (4th Dept.1984).

There the appellate court reversed the trial court's holding that "the readying of land for storage space could not be considered part of the erection; etc. of a building or structure." *Nagel*, 478 N.Y.S.2d at 739 and *see, Nagel v. Metzger*, 118 Misc.2d 441, 460 N.Y.S.2d 700, 702 (Sup.Ct. Erie County 1983). In disagreeing with the trial court, the 4th Department did hold that site clearing is "necessary and incidental" to building a "structure" and stated:

> In granting summary judgment dismissing the cause of action based on § 240 of the Labor Law, the court found the construction of the addition too remote in time and place to fall within the intent of that section. That this particular work was being performed at a distance from the site of alteration is of no consequence, as it is certain that the work was necessary and incidental to the project.

*Nagel*, 478 N.Y.S.2d at 742. However, the Appellate Court dismissed plaintiff's 240(1) case, not because plaintiff was not involved in the building of a structure, but because the accident did not involve an elevation-related risk. *Nagel*, 478 N.Y.S.2d at 742. Here, Violette's work was part of the Dellwood Project Site Plan but did not involve working on an elevated site. *See, Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). Obviously, the elevation of the ripper was responsible for Violette's injury, but he himself was on the ground working on the machinery. On such fine lines must the distinction be drawn.

■ The risk to be protected by § 240(1) of the Labor Law is the risk of falling or being hit by an object falling from an elevated work site (*see Siragusa v. State*, 117 A.D.2d 986, 499 N.Y.S.2d 533 (4th Dept. 1986); *Fox v. Jenny Engineering Corp.*, 122 A.D.2d 532, 505 N.Y.S.2d 270 (4th Dept.1986), *aff'd*, 70 N.Y.2d 761, 520 N.Y.S.2d 750, 514 N.E.2d 1374 (1987), and the ripper was not an elevated work site. A fall from a truck's damaged metal running board was not a fall from an elevated work site which would permit plaintiff to assert a cause of action pursuant to Labor Law § 240(1) (*Cipolla v. S.M. Flickinger Co.*, 172 A.D.2d 1064, 1065, 570 N.Y.S.2d 252, 253 (4th Dept.1991)).

In *Rocovich v. Consolidated Edison Co.*, *supra*, 78 N.Y.2d at 515, 577 N.Y.S.2d at 222, 583 N.E.2d at 934–35, the Court of Appeals rejected the concept of permitting plaintiff to assert a cause of action pursuant to § 240(1) of the Labor Law merely because plaintiff was working in a situation with a "greater degree of hazard." There, the Court of Appeals held:

> Plaintiff's proposed construction conflicts with the thrust of section 240(1) ... [A]s defendant points out, adopting plaintiff's "degree of hazard" interpretation would have the effect of making Labor Law section 241(6)—the general provision requiring owners and contractors to provide safe working conditions—virtually useless. Cases involving injuries due to allegedly dangerous working conditions, such as plaintiff's—which are now governed by section 241(6)—would properly be brought under the far more stringent provisions of section 240(1) where absolute liability would result. It is an accepted rule that all parts of a statute are intended to be given effect and that a statutory construction which renders one part meaningless should be avoided (see, *Matter of Albano v. Kirby*, 36 N.Y.2d 526, 530, 369 N.Y.S.2d 655, 330 N.E.2d 615 (1975)).

In its most recent decision the Appellate Division, Fourth Department in the case of *Kelleher v. First Presbyterian Church of Lockport*, 158 A.D.2d 946, 551 N.Y.S.2d 708 (4th Dept.1990), held that § 240(1) was

inapplicable to a case where a plumber was injured when the wall of a ditch in which he was working caved in. The Court upheld this view even though the ditch was approximately 5–6 feet deep and contained no shoring or shields.

In *Mack v. Altman's Stage Lighting Co.*, 98 A.D.2d 468, 470 N.Y.S.2d 664 (2d Dept. 1984), the Court agreed with the Appellate Division, Fourth Department and stated that although § 240(1) was to be liberally construed that does not mean the Courts should establish a right of recovery the legislature did not intend. The Court further upheld this position in *Stuto v. Coastal Dry Dock & Repair Corp.*, 153 A.D.2d 937, 545 N.Y.S.2d 743 (2d Dept.1989), wherein the Court refused to apply § 240(1) to a dock worker who was injured in a fall off a chair.

In *Yaeger v. New York Telephone Co.*, 148 A.D.2d 308, 538 N.Y.S.2d 526 (1st Dept. 1989), a plaintiff worker was injured while erecting a truck elevator. At the time of the accident, the plaintiff was at the bottom of the shaft attaching one piece of steel platform to a second piece. The two sections of the platform were suspended two to three feet over the plaintiff's head as he aligned the two pieces in order to bolt them together. A chainfall was supporting the two portions of platform. The chainfall had a lifting capacity of one to two tons and the platform the plaintiff was lifting weighed five tons. The channel and crossbrace bent and fell downward causing the platform pieces to fall into the pit and injure the plaintiff. The Court in its opinion states:

> In our judgment, Labor Law section 240(1) must be directed at work which is especially hazardous because it concerns heights. Absolute liability is imposed by § 240(1) upon contractors and owners in order to compel them to take special care for the safety of workers laboring under the ultra-hazardous conditions which heights entail. Workers exposed to the usual dangers of construction are protected by Labor Law § 241.

*Id.* at 528–29.

The Court reasoned that to interpret § 240(1) of the labor law in any other way would:

> ... in effect, cause the protections provided by section 240 of the Labor Law to overlap or duplicate those accorded by Labor Law 241. Moreover, it would wreak havoc upon the construction and insurance industries by imposing absolute liability for a myriad of common every day work activities not involving heights, thus making owners and contractors insurers for injured workers ...

*Id.* at 529.

The Court stated that:

> For these reasons ... section 240 should be invoked where an employee's injury is somehow related to work performed at heights whereas section 241 is applicable to ordinary construction work.

*Id.*

This position by the Appellate Division, First Department, was recently upheld in *Litizia v. Jonathan Woodner Co.*, 150 A.D.2d 274, 541 N.Y.S.2d 429 (1st Dept. 1989).

The language of § 240(1) leads to hypotheticals galore, some of which were enumerated at the argument. Here though a structure was in contemplation it was not in being, nor was the labor elevated. Scaffolds, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, were not required as a matter of statute when two pieces of earth moving equipment are being assembled, even though failure to have some such equipment available may have constituted negligence under all the circumstances.

Section 200 of the Labor Law was enacted in order to protect all workers at a job site. "It is merely a codification of the common law duty of owners and contractors to furnish a safe place to work." *Da Bolt v. Bethlehem Steel Corp.*, 92 A.D.2d 70, 459 N.Y.S.2d 503, 505 (4th Dept.1983). This section of the labor law requires that the work site be so "constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein." Labor Law § 200 (McKinney 1986).

Section 241(6) was enacted also to protect workmen working on the ground level at construction sites. Section 241(6) provides that:

All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein ...

Labor Law § 241(6) (McKinney 1986).

Here, Violette was not involved in any ultra-hazardous activity involving heights. He is not to be afforded the protection of § 240(1) of the Labor Law. Violette is adequately protected by §§ 200 and 241 of the Labor Laws.

*The Liability Of The Owners Is Assumed By Elmar Under The Indemnity Agreement*

█ Any liability which CMC and Carol may have results from the acts of others. Under the contract between CMC and Elmar, Elmar was to supervise and perform all the work at the project, to furnish all labor, materials and equipment for the completion of this project and to assume the entire responsibility and liability for all damages and injuries on this project. According to the contract, Elmar

assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom (to all persons, whether employees of Contractor or otherwise, and to all property, caused by, resulting from, arising out of, or occurring in connection with the execution of the Work and if any person shall make a claim for any damage or injury (including death resulting therefrom) as hereinabove described, whether such claim be based upon Owners passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of Owner, Contractor agrees to indemnify and save harmless Owner, its agents, servants, and employees from and against any and all loss, expense, damage, or injury that Owner may sustain as a result of any

such claim. And Contractor agrees to assume, on behalf of Owner, the defense of any action at law or in equity, which may be brought against Owner upon such claim and to pay, on behalf of Owner upon its demand, the amount of any judgment that may be entered against Owner in any such action. Except that Contractors indemnity shall not pertain to any loss, expense, damage or injury caused by or resulting from the sole negligence of Owner, its agents or employees, unless said agreement is expressly permitted by applicable state law.

Contract between CMC and Elmar, Article 8 at p. 4, under the title "Insurance."

Where a contract exists between the parties with an indemnity agreement, the party seeking indemnity is entitled to summary judgment over the contractor, *Schwalm v. County of Monroe*, 158 A.D.2d 994, 550 N.Y.S.2d 970 (4th Dept.1990). Also, in *Heath v. Soloff Constr. Inc.*, 487 N.Y.S.2d 617 (4th Dept.1985), the only liability asserted on the part of the Owner was based on the violation of the statute creating an absolute non-delegable duty and summary judgment on the indemnity was granted against the contractor.

In a recent decision regarding indemnity contracts, the Court of Appeals held that a contractor is entitled to indemnity under a written contract from the subcontractor employer even if the employer was not negligent in any way. *O'Connor v. Serge Elevator Co.*, 58 N.Y.2d 655, 458 N.Y.S.2d 518, 444 N.E.2d 982 (1982).

Here Violette's injuries arose out of his work and Elmar must indemnify Armonk, CMC and Carol for all injuries sustained by plaintiff as a result of this accident.

*Conclusion*

On the facts and conclusions stated above, the Violettes' motion is denied, and the motion of Armonk, CMC and Carol for indemnity by Elmar is granted.

It is so ordered.