James **VIOLETTE** and Loretta Violette, Plaintiffs,

v.

**ARMONK ASSOCIATES, L.P.,** a New York Limited Partnership; **Elmar Contracting Corporation,** and **Campbell Chain Co., Inc.,** Defendants.

**ELMAR CONTRACTING CORPORATION,** Third–Party Plaintiff,

v.

**MAJOR MACHINERY, INC.,** Third–Party Defendant.

No. 90 Civ. 4059 (RWS).

United States District Court, S.D. New York.

April 22, 1994.

tenant. (Def.'s Rep.Mem. on Remedies at 10; Def.'s Ex. HC at 24–25.)

Levy Phillips & Konigsberg by Alan J. Konigsberg, Audrey M. Perlman, New York City, for plaintiffs.

Langan & Levy by Joann T. Trezza, New York City, for defendants Armonk Associates, L.P., CMC Realty and Development, Inc., and Carol Management Corp.

Kral, Clerkin, Redmond, Ryan, Perry & Girvan by David P. Redmond, New York City, for defendants Campbell and Cooper.

F.V. Mina, P.C. by Jennifer Jaffee, New York City, for defendant-third-party plaintiff.

Clune, Hayes, Frey, Bentzen & Clune, P.C. by Richard D. Bentzen, Harrison, NY, for third-party defendant.

## *OPINION*

SWEET, District Judge.

The plaintiffs, James Violette ("Violette") and Loretta Violette ("Mrs. Violette") (collectively, the "Violettes") have moved for an order, pursuant to Rule 15, Fed.R.Civ.P., granting them leave to amend their complaint to increase the *ad damnum* clause, and for an order excluding certain evidence from consideration in this matter. In addition, the Violettes appear to have moved for reargument of this Court's prior opinions relating to their claims pursuant to New York Labor Law § 240(1) ("Labor Law Section 240(1)").

Defendants Armonk Assoc., CMC Realty & Developing, Inc., and Carol Management Corp. (collectively, "Armonk") have moved for an order, pursuant to Rule 56, Fed.R.Civ. P., granting them summary judgment and dismissing the Violettes' complaint and all cross claims and counterclaims against them. Defendant Elmar Contracting Corp. ("Elmar," and, together with Armonk, the "Defendants") has moved for an order, pursuant to Rule 56, Fed.R.Civ.P., granting them summary judgment and dismissing the complaint and all cross-claims and counterclaims against it.

For the following reasons, the Plaintiffs' motion to amend is granted, their motion to reargue is denied, and their motion to exclude evidence is denied. The Defendants' motions for summary judgment are granted in part and denied in part.

### *The Parties*

The parties, facts, and prior proceedings of this case have been thoroughly discussed in prior opinions of this Court, familiarity with which is assumed. *See, e.g., Violette v. Armonk Assocs., L.P.,* 823 F.Supp. 224

(S.D.N.Y.1993); *Violette v. Armonk Assocs., L.P.*, 808 F.Supp. 1060 (S.D.N.Y.1992). They will be described below only to the extent necessary to decide the present motions.

James Violette was injured on November 10, 1988, when a chain (the "hoist chain") broke and a ripper fell upon him, causing serious injury. Violette's wife, Loretta, has brought suit for loss of consortium. Both plaintiffs are residents of the State of Connecticut.

Defendant Armonk Associates, L.P. ("Armonk") is a New York partnership which was and is the owner of property known as the Dellwood Estates ("Dellwood Estates"), in the Town of New Castle, County of Westchester, New York. Defendant Carol Management Corp. ("Carol") is a New York corporation and a real estate developer which initiated the construction of condominiums at Dellwood Estates. Defendant CMC Realty and Development, Inc. ("CMC") is also a New York corporation and successor to Carol.

Defendant Campbell, a North Carolina corporation and a division of defendant Cooper, is alleged to be the manufacturer of the defective hoist chain.

Defendant and third-party plaintiff Elmar Contracting Corp. ("Elmar") is a New York corporation and the general contractor for construction on Dellwood Estates.

Major Machinery ("Major") is a Connecticut corporation that directly employed James Violette and that leased a bulldozer and a ripper to Elmar.

### Facts

Carol intended to build condominiums at Dellwood Estates, and entered into a contract on August 10, 1988 with Elmar as general contractor to provide site preparation. On November 10, 1988 Elmar rented a bulldozer and ripper from Major in connection with the proposed excavation. The bulldozer and ripper were brought to the property by Major, and Violette, an employee of Major, undertook to attach the ripper, which weighed 10,600 pounds, to the bulldozer. In order to lift the ripper into position for attachment, Violette requested assistance from Elmar, which provided a track loader.

The bucket of the track loader was attached by a chain manufactured by defendant Campbell to the ripper. The track loader hoisted the ripper off the ground and into position for attachment to the bulldozer by aligning and seating the pin attachments. Violette was under the ripper after it was hoisted in order to accomplish the attachment. The chain broke, and the ripper fell on Violette, who suffered injuries.

### Prior Proceedings

The Plaintiffs commenced this action in July 1990. Defendant Elmar filed a third-party complaint against Major in August 1990. The Plaintiffs moved for summary judgment against Armonk, Elmar, CMC, and Carol, and Armonk, CMC, and Carol cross-moved against Elmar for indemnity. By an opinion dated December 10, 1992, this Court denied the Violettes' motion for summary judgment and granted the cross-motion of Armonk, CMC, and Carol. On June 7, 1993, the Court granted the Violettes' motion to reargue the December 10 opinion, and, upon reargument, again denied their motion for summary judgment and denied their motion for an interlocutory appeal pursuant to 28 U.S.C. 1292. Argument was heard on the present motions on February 23, 1994, and the motions were considered fully submitted as of that date.

### Discussion

### The Summary Judgment Motions

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of material fact exists. *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd*, 954 F.2d 62 (2d Cir.1992).

The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party

opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady*, 863 F.2d at 210; *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983); *Swan Brewery Co. v. United States Trust Co.*, 832 F.Supp. 714, 717 (S.D.N.Y.1993).

However, the remedy of summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed " 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### New York Labor Law § 240(1)

This Court has twice held that New York Labor Law § 240(1) does not apply to this case. *See Violette v. Armonk Assocs., L.P.*, 823 F.Supp. 224 (S.D.N.Y.1993); *Violette v. Armonk Assocs., L.P.*, 808 F.Supp. 1060 (S.D.N.Y.1992). With more persistence than inspiration, the Plaintiffs again ask the Court to reverse our prior holdings on this issue.

■ Although the Plaintiffs do not specify the basis for their request, presumably it is made pursuant to Local Rule 3(j), under which the moving party must demonstrate that the Court overlooked controlling decisions or material factual matters that were before the Court on the underlying motion. *See In re New York Asbestos Litig.*, 847 F.Supp. 1086, at 1114 (S.D.N.Y.1994); *Ades v. Deloitte & Touche*, 843 F.Supp. 888 (S.D.N.Y.1994).

The Plaintiffs have offered no case law overlooked by the Court, but assert that the Court did not understand that the ripper was off the ground when it fell onto the plaintiff. This assertion does not comport with the Court's statement of the facts, which noted that:

> The bucket of the track loader was attached by a chain manufactured by defendant Campbell Chain Co., Inc. ("Campbell") to the ripper. The track loader hoisted the ripper off the ground and into position for attachment to the bulldozer by aligning and seating the pin attachments.
>
> Violette was under the ripper after it was hoisted in order to accomplish the attachment. The chain broke, the ripper fell on Violette, who suffered injuries.

*Violette*, 808 F.Supp. at 1062.

As the Plaintiffs have offered neither case law nor facts that were overlooked by this Court in its prior opinions, their third attempt to assert that N.Y. Labor L. § 240(1) applies to this case fails.

### N.Y. Labor Law § 241(6)

Many of the questions surrounding the Plaintiffs' claims under the New York Labor Law have been answered by the New York Court of Appeals' recent decision in *Ross v. Curtis–Palmer Hydro–Elec. Co.*, 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993). New York Labor Law § 241(6) ("Labor Law Section 241(6)") states that:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> \* \* \* \* \* \*
>
> (6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the person employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and owners and contractors and their agents for such work, except the owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

■ Labor Law § 241(6) imposes a non-delegable duty upon owners and contractors, regardless of their control or supervision at the worksite. *Ross*, 81 N.Y.2d at 500, 601 N.Y.S.2d 49, 618 N.E.2d 82. However, § 241(6) is not itself a source of an owner's or general contractor's nondelegable duty to construction workers. *See Ross*, 81 N.Y.2d at 504, 601 N.Y.S.2d 49, 618 N.E.2d 82. Rather, in order to establish a cause of action pursuant to § 241(6), a plaintiff must demonstrate a violation of the New York Industrial Code.

The violation of the Industrial Code relied upon must be a specific, rather than a general safety standard.

[A] distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking the "[g]eneral descriptive terms" set forth and defined in 12 NYCRR 12–1.4(a). The former give rise to a nondelegable duty, while the latter do not. [If] the regulation on which plaintiff relies falls into the latter category, he cannot benefit from the reduced burden of proof applicable to causes of action asserted under Labor Law section 241(6).

*Ross*, 81 N.Y.2d at 505, 601 N.Y.S.2d 49, 618 N.E.2d 82.

■ The Violettes claim that the Defendants violated 12 N.Y.C.R.R. § 23–9.4 ("Section 23–9.4"), which provides, in part, that "[w]here power shovels and backhoes are used for material handling, such equipment and the use thereof shall be in accordance" with a series of specific safety requirements.

Violette was injured through the use of a track loader and a ripper, rather than a power shovel or backhoe. The Plaintiffs allege, without supporting citation, that the Defendants violated Section 23–9.4 by not providing Violette with a backhoe.

The language of a regulation is to be construed "according to the ordinary and plain sense of its words." *Rodriguez v. Joseph*, 149 A.D.2d 14, 18, 544 N.Y.S.2d 592 (1st Dept.1989). Conspicuously absent from the words of Section 23–9.4 is any requirement that employers furnish power shovels or backhoes to workers under specific circumstances. Rather, the strictures of Section 23–9.4 apply only "where power shovels and backhoes are used."

■ 12 N.Y.C.R.R. § 23–1.5, entitled "[g]eneral responsibility of employers," provides in part that "[n]o employer shall suffer or permit an employee to use any machinery or equipment which is not in good repair and in safe working condition." This provision could be read as imposing a duty on employers to ensure that employees are provided with the proper equipment to do their jobs. However, this section, in contrast to Section 23–9.4, is among the provisions "that establish general safety standards by invoking the '[g]eneral descriptive terms' set forth and defined in 12 N.Y.C.R.R. 23–1.4(a)," the violation of which, under *Ross*, does not trigger liability under Labor Law § 241(6).

■ The Plaintiffs also claim that the Defendants violated certain OSHA regulations, and that these violations independently establish a *prima facia* case against the Defendants under Labor Law Section 241(6). For purposes of determining liability under Labor Law Section 241(6), the responsibility to see that OSHA regulations are carried out lies with employers, not with owners of property or contractors. *Pellescki v. City of Rochester*, 198 A.D.2d 762, 763, 605 N.Y.S.2d 692, 694 (4th Dept.1993); *Herman v. Lancaster Homes, Inc.*, 145 A.D.2d 926, 926, 536 N.Y.S.2d 298 (4th Dept.1988).

In *Pellescki*, the plaintiffs argued that the owner and general contractor of the property where the plaintiff was injured had violated Labor Law § 241(6) by failing to monitor his employer's compliance with certain OSHA safety regulations. The Appellate Division, citing the Court of Appeals in *Ross*, held that "[i]n order to show that a nondelegable duty on the part of the owner and general contractor exists under Labor Law § 241(6), plaintiff was required to demonstrate that the owner or general contractor violated a specific rule of the [New York] Labor Commissioner establishing a health or safety standard." The court went on to hold that "[a] violation of OSHA regulations by an employer does not impose a nondelegable duty on an owner

or general contractor under Labor Law § 241(6)." *See also Herman*, 145 A.D.2d at 926, 536 N.Y.S.2d 298 (reversing denial of motion for summary judgment for dismissal of complaint alleging violation of Labor Law § 241 predicated, in part, on breach of OSHA regulations); *Ares v. State*, 80 N.Y.2d 959, 960, 590 N.Y.S.2d 874, 605 N.E.2d 361 (1992) (Labor Law § 241(6) is inapplicable where there is no showing that "a violation of a safety regulation promulgated pursuant to Labor Law § 241(6) was the proximate cause of the accident.").

As their sole support for the assertion that violations of OSHA regulations can support a claim under Labor Law § 241(6), the Plaintiffs cite *Kollmer v. Slater Elec., Inc.*, 122 A.D.2d 117, 504 N.Y.S.2d 690 (2d Dept.1986). In *Kollmer*, the plaintiff brought suit under Labor Law § 241(6) against the owner of property on which he was injured while using a backhoe owned by the plaintiff's employer. The court held that relevant OSHA regulations could be admitted into evidence, after which the jury would determine whether the regulations were violated and, if so, whether the violation constituted evidence of negligence for which the owner of the property could be vicariously liable under Labor Law § 241(6).

*Kollmer*, however, predated the recent opinion of the Court of Appeals in *Ross* which clarified that it is the duty to comply with the specific safety rules and regulations promulgated by the New York Department of Labor that is made nondelegable under Labor Law § 241(6). *Ross*, 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82; *see Pellescki*, 198 A.D.2d at 763, 605 N.Y.S.2d at 694. This recent holding by the Court of Appeals and its interpretation by the Appellate Division establish that claims under Labor Law § 241(6) must be predicated directly on violations of the N.Y.C.R.R., rather than on OSHA regulations.

The Defendants have met their burden of coming forward with evidence that they did not violate 12 N.Y.C.R.R. § 23–9.4. The Plaintiffs have failed to bring forth evidence to the contrary. Summary judgment is therefore granted in favor of all moving Defendants on the Plaintiffs' claims predicated on Labor Law § 241(6).

*New York Labor Law § 200(1)*

New York Labor Law § 200(1) ("Section 200(1)"), provides that:

All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The [Labor] board may make rules to carry into effect the provisions of this section.

■ When a claim based on Section 200(1) "arises from a subcontractor's methods or materials, recovery against [an] owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation." *Ross*, 81 N.Y.2d at 505, 601 N.Y.S.2d 49, 618 N.E.2d 82.

In *Ross*, the plaintiff submitted a copy of a contract between the owner and the general contractor in which the general contractor undertook to supervise the construction work and to comply with the legal standards governing the safety of all employees on the site, including those of its subcontractors. The Court of Appeals held that, while this evidence was not, in itself, sufficient to demonstrate that the contractor had exercised actual supervision or control over the worksite, it was sufficient to defeat the plaintiffs summary judgment motion predicated upon a claim that it did not exercise supervision or control.

The Plaintiffs have submitted Elmar's deposition by jobsite superintendent Mark Giordano, in which Giordano claims that he "was responsible for safety at the job site." (Pl.s' Elmar Aff. Ex. 8.) Violette has testified that it was Giordano who gave him permission to enter the site for the purpose of making the bulldozer ready for use, and directed him to a safe place to perform the operation. (Pl.s' Elmar Aff. Ex. 6.) Violette asked Giordano to allow him to use an "excavator" to assist in attaching the ripper to the

bulldozer. Giordano told him that the excavator was "busy," and offered him the use of the track loader. (Pl.s' Elmar Aff. Ex. 2.) Elmar ultimately provided the track loader that was involved in this accident. With Giordano's permission, William Finney, an Elmar employee, operated the track loader which was used to attempt to attach the ripper to the bulldozer. (Pl.s' Elmar Aff. Ex. 2.)

Armonk, by Donald Wentworth, testified that an employee of CMC would, under normal circumstances, supervise people on the job site. Wentworth also testified that CMC had a trailer on the site, in which someone would stay every day. (Pl.s' Armonk Aff. Exs. 6 & 11.) Elmar, by Mark Giordano, testified that Carol Management had a job superintendent and project manager based at the site, and that they were there for several hours every day. (Pl.s' Armonk Aff. Ex. 8, 10.) Elmar, by Joseph Lois, Jr., testified that Carol Management's project superintendent was present at the site daily, and that this superintendent was "supposed to be on the job daily monitoring what we did and directing us in to what sequence they wanted it done." (Pl.s' Armonk Aff. Ex. 9.)

Armonk's argument that this Court's finding that they are entitled to indemnity from Elmar for any liability incurred in this action precludes their liability under § 200(1) is without merit. That finding was based upon an interpretation of a contractual indemnification agreement pursuant to which Elmar agreed to indemnify Armonk regardless of their participation in the wrong or their breach of any statutory duties or obligations. *See Violette*, 808 F.Supp. at 1065.

The evidence offered by the Plaintiffs is sufficient to defeat the Defendants' motions for summary judgment on the Plaintiffs' claims pursuant to § 200(1), because it indicates that a triable issue of material fact exists regarding whether the Defendants exercised supervision and control over the work performed by Violette. *Cf. Ross*, 81 N.Y.2d at 506, 601 N.Y.S.2d 49, 618 N.E.2d 82.

### Amendment of Ad Damnum Clause

The Plaintiffs have moved, pursuant to Rule 15, Fed.R.Civ.P., for leave to increase the *ad damnum* clause of their complaint from $2,500,000 and $1,000,000 to $25,000,000 and $10,000,000 for James Violette and Loretta Violette, respectively. The timing of this motion, the Plaintiffs claim, is occasioned by the increasing complexity of Violette's injuries.

■ Amendments to increase an *ad damnum* clause are liberally permitted, absent prejudice to a party. *Greenspon v. Supermarkets Gen. Corp.*, 744 F.Supp. 77, 77 (S.D.N.Y.1990); *Shochat v. Weisz*, 757 F.Supp. 189, 196 (E.D.N.Y.1991). A logical reason for this is that "[i]n the federal courts, the amount of damages found by a jury is not limited to that amount set forth in the complaint as the requested relief." *Roorda v. American Oil Co.*, 446 F.Supp. 939, 948 (W.D.N.Y.1978).

■ The principal prejudice alleged by the Defendants to derive from the proposed amendment is that they may be required to retain personal counsel to protect their interests beyond available insurance coverage. In *Greenspon*, the defendants claimed that they would suffer prejudice if this Court granted the plaintiffs motion to increase the *ad damnum* clause in their complaint from one million to four million dollars because the carrier for liability in excess of 1.5 million dollars had not been notified of the claim. The Court held that this did not constitute sufficient prejudice to justify denying the plaintiff's motion, since the defendant had always been aware that the plaintiff was a handicapped person for whom the accident might have significant consequences.

In the present case, the Defendants have always been aware that Violette suffered serious injuries, which might result in significant damages. The Violettes have shown a reasonable basis for their motion, and the Defendants have failed to show sufficient prejudice to preclude granting the Plaintiffs' request.

### Plaintiffs' Motion to Exclude Evidence

The Plaintiffs have made a motion *in limine* for an order that a Town of New Castle Police Supplemental Report dated November 10, 1988, a statement by Elmar's Job Site Superintendent Marc Giordano dated No-

vember 11, 1988, and an accident report completed by Giordano dated November 10, 1988, be excluded from evidence, arguing that these documents contain hearsay and are self-serving.

In *United States v. Feola*, 651 F.Supp. 1068 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989), the defendant made a motion *in limine* on a variety of grounds to preclude the Government from offering in evidence at trial a written statement that was seized by the government during a lawful search. This Court found that the issue of the admissibility of the statement was premature, since it would be:

> [I]mproper for this Court to speculate as to the circumstances that might surround the introduction of this evidence at trial, specifically, the adequacy of the foundation which will be set forth for the purpose of authentication, the probative value weighed against the potential prejudicial impact in light of the evidence presented, and the purpose for which such a statement will be introduced at that time.

*Feola*, 651 F.Supp. at 1129. The Court therefore denied the motion *in limine* without prejudice to the defendant's renewal of the motion at such time as the Government sought to introduce the statement. *See also Arnett v. Aspin*, 846 F.Supp. 1234 (E.D.Pa. 1994) (denying as premature motion *in limine* to exclude evidence).

In the present case, the Plaintiffs point to several circumstances under which the documents in question may well be inadmissible. However, at present, this matter is not on trial, and it is unknown whether any of these items will be offered as evidence, and further, in what context these documents may be used at the time of trial. There are circumstances under which these documents may be admissible. *See, e.g., United States v. Castillo*, 14 F.3d 802 (2d Cir.1994) (within district judge's discretion to admit hearsay evidence for rehabilitation of witness); *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221 (5th Cir.1984) (testimony by deceased's co-worker concerning conversation he had with the deceased was not hearsay where it was admitted to show knowledge of danger and assumption of risk, not truth of statements made in conversation).

The context necessary to fully evaluate the admissibility of the challenged statements has not been developed at this time. This Plaintiffs' motion *in limine* for an order excluding this evidence is denied, without prejudice to its renewal at such time, if any, that the Defendants seek to introduce it at trial.

### Conclusion

The Defendants' motions for summary judgment dismissing the Plaintiffs' claims relating to Labor Law §§ 240 and 241(6) are granted, and the Defendants' motions for summary judgment dismissing the Plaintiffs' claims relating to Labor Law § 200(1) and dismissing all cross claims and counter claims against them are denied.

The Plaintiffs' motion to reargue this Court's prior decisions relating to their claims pursuant to Labor Law § 240 is denied, their motion to amend their complaint to increase the amount set forth in the *ad damnum* clause is granted, and their motion for an order stating that certain documents are inadmissible is denied.

This matter shall be set down for trial on May 4, 1994.

It is so ordered.