**James VIOLETTE and Loretta Violette, Plaintiffs,**

v.

**ARMONK ASSOCIATES, L.P., a New York Limited Partnership; Elmar Contracting Corporation, and Campbell Chain Co., Inc., Defendants.**

**ELMAR CONTRACTING CORPORATION, Third–Party Plaintiff,**

v.

**MAJOR MACHINERY, INC., Third–Party Defendant.**

**No. 90 Civ. 4059 (RWS).**

United States District Court, S.D. New York.

Jan. 19, 1995.

**1280**

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, Audrey M. Perlman, of counsel), for plaintiffs.

Clune, Hayes, Frey, Bentzen & Clune, P.C., Harrison, NY (Richard D. Bentzen, of counsel), for third-party defendant.

### OPINION

SWEET, District Judge.

Plaintiffs' Counsel, Levy, Phillips & Konigsberg ("LPK"), has moved for an order directing Aetna Casualty & Surety Company ("Aetna") to pay attorney fees and disbursements pursuant to New York State Worker's Compensation Law § 29.

For the following reasons, the Plaintiffs' motion is granted.

### The Parties, Prior Proceedings and Facts

The parties, facts, and prior proceedings of this case have been thoroughly discussed in prior opinions of this Court, familiarity with which is assumed. *See, e.g., Violette v. Armonk Assocs., L.P.,* 849 F.Supp. 923 (S.D.N.Y.1994); *Violette v. Armonk Assocs., L.P.,* 823 F.Supp. 224 (S.D.N.Y.1993); *Violette v. Armonk Assocs., L.P.,* 808 F.Supp. 1060 (S.D.N.Y.1992). They will be described below only to the extent necessary to decide the present motions.

James Violette was injured on November 10, 1988, when a chain (the "hoist chain") broke and a ripper fell upon him, causing serious injury. Violette's wife, Loretta, has brought suit for loss of consortium. Both Plaintiffs are residents of the State of Connecticut.

Defendant Armonk Associates, L.P. ("Armonk") is a New York partnership which was and is the owner of property known as the Dellwood Estates ("Dellwood Estates"), in the Town of New Castle, County of Westchester, New York. Defendant Carol Management Corp. ("Carol") is a New York corporation and a real estate developer which initiated the construction of condominiums at Dellwood Estates. Defendant CMC Realty and Development, Inc. ("CMC") is also a New York corporation and successor to Carol.

Defendant Campbell, a North Carolina corporation and a division of defendant Cooper, is alleged to be the manufacturer of the defective hoist chain.

Defendant and third-party plaintiff Elmar Contracting Corp. ("Elmar") is a New York corporation and the general contractor for construction on Dellwood Estates.

Major Machinery ("Major") is a Connecticut corporation that directly employed James Violette and that leased a bulldozer and a ripper to Elmar. Aetna Casualty and Surety Insurance Company is the Worker's Compensation carrier for the claim filed by Violette.

On September 19, 1991, the Court granted Major's motion to intervene as of right to assert a claim for recovery of Worker's Compensation benefits, past and future, pursuant to § 31–293 of Connecticut's Worker's Compensation Statute.

Following the conclusion of discovery, Major made a motion for summary judgment dismissing the Third Party Complaint and any cross-claims on the grounds that Connecticut law controlled the issues and that no right of actions existed under the laws of Connecticut by virtue of the payment and acceptance of Worker's Compensation in accordance with the Connecticut statutes. No opposition was made to the motion, which was granted on March 31, 1994.

On May 26, 1994, the Plaintiffs and Major signed a stipulation in New York which stated:

> Whereas the plaintiffs upon the trial of the lawsuit referenced above will offer into evidence and attempt to recover amounts for medical expenses and lost wages past and future at least to the extent of Workers' Compensation benefits paid to the point of trial ...
>
> 1. In the event of settlement of the action, there will be an agreement on divi-

sion of the proceeds of settlement by the plaintiffs and Aetna ... or

2. Should this matter proceed to trial and verdict and in the event the plaintiffs and Aetna ... cannot agree to an allocation of the proceeds recovered, then the parties shall leave to resolution by the trial court the manner of division of ... the amounts to be apportioned between plaintiffs and Aetna ...

The matter came to trial in June 1994. Prior to the commencement of testimony, all defendants (the "Settling Defendants"), with the exception of Campbell, settled with the Plaintiffs for in excess of $2,000,000. This amount included the full claim of Major for the $498,791.16 paid to Plaintiffs from the date of the accident to the date of the settlement.

The Plaintiffs continued the trial against Campbell and the jury rendered a verdict in favor of Campbell.

On June 17, 1994 an agreement was reached and memorialized between Major, Aetna and Plaintiffs that Aetna and Major would accept the approximately $500,000 as full compensation and would waive any moratorium or set off they might otherwise be entitled to received from Violette with respect to his action against the settling defendants. The letters memorializing the agreement made no reference to attorney's fees.

On June 20, 1994, the $498,791.16 was paid to Aetna from ITT/Hartford.

On August 1, 1994, LPK wrote to Aetna requesting that they send one-third of the amount paid to Aetna, or $166,263.72, to LPK to cover the proportional cost of fees and disbursements that LPK advanced in connection with representing Violette.

On August 10, 1994 Aetna wrote back to LPK indicating that it was not within the agreement that they would pay LPK any portion of the settlement sum for attorneys' fees. Aetna requested additional documentation that this was in fact the agreement.

This motion followed. Oral argument was heard on the motion on November 2, 1994 at which time motion was considered fully submitted.

## Discussion

Violette's attorneys maintain that they are entitled to attorney's fees based on both New York Worker's Compensation Law and on a contract theory of unjust enrichment.

### New York Workman's Compensation Law Does Not Apply in This Case

There is no question that Violette made his application under the laws of the State of Connecticut for the payment of Worker's Compensation benefits and was reimbursed in accordance with the statutes, regulations and rules of that state. At two earlier points in these proceedings this Court has granted motions based on application of Connecticut Worker's Compensation Law to grant Major the right to intervene and to dismiss the third party claim against it.

New York's choice of law rules dictate that Connecticut law apply here. As stated in *Hutner v. Greene,* 734 F.2d 896, 899 (2d Cir.1984) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969)):

New York courts apply a "paramount interest" test to choice of law issues involving contractual disputes. Under such a test, the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.

The application of Connecticut's Worker's Compensation laws is consistent with a choice of law analysis. New York's highest court has applied Workers' Compensation laws of other states where out-of-state employers are involved and the balance of relevant interests supports that result. *See Cooney v. Osgood Machinery,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Thompson v. IBM,* 862 F.Supp. 79, 81 (S.D.N.Y.1994) (applying Massachusetts law to bar action against Massachusetts employer who would be immune from action under Massachusetts Worker's Compensation scheme).

In this case, the employer and the employee are Connecticut citizens. New York no

doubt has strong interests in regulating its own employers, but its employers are not here involved. In general, New York courts have applied foreign Workman's Compensation law when foreign employees and employers are involved. There might be times when the New York courts would invoke the public policy exception and apply its own Workers' Compensation law, but this does not appear to be such an exception. In general, the public policy exception should be used rarely and only for those cases when the foreign law is truly obnoxious. *Cooney v. Osgood Machinery*, 81 N.Y.2d 66, 79, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993).

Plaintiffs have stated that New York has a public policy of having Workers Compensation carriers share the burdens of litigation. This may be true, but Plaintiffs have cited no cases nor does it appear to be true that the Connecticut rule of taking legal fees out of the settlement prior to distribution to the insurance carrier would be repugnant to New York interests. As described by Plaintiffs, the law in New York was developed so that a claimant would not bear the full expense of the litigation. This has not happened in this case. Violette paid attorney's fees only on his portion of the settlement. It is the lawyers and not the claimant who bore the cost of litigation.

### Litigation Fees Must be Paid to Avoid Unjust Enrichment

█ The stipulation of May 26 and the agreement memorialized in the June 17 letters do not discuss attorney's fees. Aetna received that to which it was entitled under the agreement, but was, however, unjustly enriched.

In determining whether or not Aetna was unjustly enriched by the transactions surrounding the agreements of May 26 and June 17, it is appropriate to apply the law of New York. The May 26 stipulation was executed in New York and signed by New York attorneys and both agreements involved settlement of a case pending in this district with work done by New York attorneys.

The New York Court of Appeals has stated that:

The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.... A quasi contract only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment ... a quasi contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result.

*Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (internal citations omitted).

█ While "it is impermissible ... to seek damages in an action sounding in quasi-contract where the party has fully performed on a valid and written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties[,]" *Clark–Fitzpatrick*, 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d 190, this is not the case here. The agreements do not expressly address the issue of attorneys' fees. Additionally, it is not reasonable to assume that LPK would agree to secure a settlement for Aetna without expecting that it would be compensated for its services.

█ In order to recover for unjust enrichment under New York law, a plaintiff must show that (1) defendant was enriched, (2) the enrichment was at the plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *Hutton v. Klabal*, 726 F.Supp. 67, 72 (S.D.N.Y.1989).

In this case Aetna benefitted significantly in that to date it has not had to pay attorneys' fees for the work LPK did to secure a recovery for Aetna of $498,791.16. Aetna has not argued that LPK is not entitled to fees for its work but rather that the practice in Connecticut [1] is to take counsel's fee from

---

1. Connecticut General Statute Section 31–923(a) reads, in pertinent part:

the damage award, distribute the rest to cover employer liens, and finally distribute whatever remains to the employee. Aetna does not believe that the fees for LPK should come from Aetna's agreed upon settlement.

Relying on the practice in Connecticut, Aetna asserts that it would not have agreed to the sum it received had it known that it would be reduced by attorneys' fees. However, the New York practice of assessing each beneficiary for its share of counsel fees is appropriate to apply here where Aetna has received full recovery of its lien without expense.[2]

Equity and good conscience require that Aetna compensate LPK for legal services performed for Aetna's benefit.

The motion to order payment of attorney's fees is granted. Settle order on notice.

It is so ordered.

... If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenses, including attorney's fees incurred by the employee in effecting the recovery ... If the damages, after deducting the employee's expenses as provided [above], are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of his injury.

2. New York State Workers' Compensation Law § 29(1) states, in pertinent part, that:

... Should the employee ... secure a recovery from such other ... such employee ... may apply ... for an order apportioning the reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee ... and the lienor.