Richard **JOBLON** and Magdalena **Joblon**, Plaintiffs,

v.

Sheldon H. **SOLOW** and Avon Products, Inc., Defendants.

Sheldon H. **SOLOW**, Third–Party Plaintiff,

v.

**GELLERE ELECTRIC CONSTRUCTION & MAINTENANCE, INC.**, Third–Party Defendant.

94 Civ. 0610.

United States District Court, S.D. New York.

Feb. 13, 1996.

---

David P. Kownacki, New York City, for Plaintiffs.

Barry, McTiernan & Moore by Mark P. Hannafey, of counsel, New York City, for Defendant/Third–Party Plaintiff.

McMahon, Martine and Gallagher by Timothy D. Gallagher, of counsel, New York City, for Third–Party Defendant.

LaBrum & Doak by John P. Cookson, of counsel, New York City, for Defendant Avon Products, Inc.

SWEET, District Judge.

Plaintiffs Richard Joblon ("Joblon") and Magdalena Joblon (collectively, "the Joblons") have moved for partial summary judgment under Rule 56, Fed.R.Civ.P., declaring that Section 240(1) of the Labor Law of the State of New York (McKinney 1986) ("Section 240(1)") applies to the Joblons' claim for damages arising out an injury suffered by Joblon while working as an electrician on property owned by defendant Sheldon H. Solow ("Solow") and leased by defendant Avon Products, Inc. ("Avon"). Solow has moved, under the same rule, for summary judgment for indemnification against co-defendant Avon and against third-party defendant Geller Electric Construction and Maintenance, Inc. ("Geller"), the employer of Joblon. Avon has moved for summary judgment declaring a right to indemnification by Geller. Geller has moved for summary judgment that Section 240(1) does not apply and that Joblon, Wayne Gordon ("Gordon"), and George Schwab ("Schwab") were special employees of Avon.

For the reasons set forth below, the Joblons' motion will be denied. Geller's motion for summary judgment that Section 240(1) does not apply to the facts of this case will be granted. Geller's motion for summary judgment that Joblon, Schwab, and Gordon were special employees of Avon will be denied. Solow's motions for summary judgment will be granted as to Avon and denied as to Geller. Avon's motion for summary judgment will be denied.

### Prior Proceedings

The complaint of the Joblons against Solow and Avon was filed on February 1, 1994, alleging diversity jurisdiction and a claim for personal injuries suffered when Joblon fell from a stepladder while working on Solow's property. Solow filed his third-party complaint against Geller on June 2, 1994, and on August 8, 1994, Avon filed its cross-claim against Geller. Discovery proceeded, and the instant motions were heard and submitted on November 29, 1995.

### The Facts

Joblon is an electrician employed by Geller, which in turn had been hired by Avon to provide ongoing services as house electrician at the building at 9 West 57th Street, New York City. That building is owned by Solow, and Avon a tenant under a lease containing a clause which indemnified Solow for certain acts committed by Avon.

On January 30, 1992, Joblon had been working in the Avon space as an electrician for ten days. On that date, in accordance with the routine for job assignments, he was directed by Gordon, the foreman from Geller, to install an electric wall clock in the Avon mail room on the twentieth floor as had been requested by the Avon facilities supervisor. Together with Schwab, his co-worker, Joblon obtained the equipment necessary to perform this assignment from a storeroom under the control of Geller, including a six- or eight-foot wooden A-frame ladder (the "Ladder"). Joblon proceeded to a small room adjacent to the mail room in order to run an electrical line from an outlet in that room through the wall to provide electrical power for the clock which was to be installed on the mail room wall.

The size of the room in which Joblon and Schwab started their work precluded them from fully opening the Ladder so that it could support itself in the normal fashion. The Ladder was partially opened and leaned

against the wall with the back legs about 30 inches from the wall. During the morning each of the two men took turns working on the Ladder positioned in this manner while the other secured the base of the Ladder by holding onto it while on the ground, as they chiselled the passage through the wall to accommodate the electrical line.

Shortly before one o'clock, Schwab went to the mail room on the other side of the wall. Joblon retrieved additional materials and started up the Ladder when it shifted. He lost his balance and fell backwards while throwing out his arms to break his fall. In so doing, he suffered injuries which subsequently required two surgical procedures and extensive medical care. He has alleged a permanent, partial disability and no longer works.

These facts are established by the submissions of the parties and are not in dispute.

## Discussion

### I. Standard for Summary Judgment

The instant motion is brought pursuant to Rule 56. The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Federal Rule of Civil Procedure 1: namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. 317 at 327, 106 S.Ct. 2548, 106 S.Ct. at 2555. A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

### II. Section 240 Does Not Apply to These Facts

Section 240 has given rise to more than its fair share of litigation and amendment going back to its origins in 1885. It provides, in pertinent part, that:

> All contractors and owners and their agents, ... in the erection, demolition, repairing, altering, painting, cleaning, or pointing or a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, ... ladders ... which shall be so constructed, placed and operated as to give proper protection to a person so employed.

This Court's most recent brush with the section came in *Violette v. Armonk*, 823 F.Supp. 224 (S.D.N.Y.1993), *see also Violette v. Armonk*, 808 F.Supp. 1060 (S.D.N.Y.1992), where the issue was whether or not construction was involved—an issue determined in favor of the plaintiff. *Id.* Here the issue turns on whether the activity involved is "repairing, altering" or maintenance. The parties have cited equally persuasive authorities for each categorization. Rather than engage in an *ipse dixit* determination, it is appropriate to reflect on the underlying purpose of the statute to reach the determination that Joblon's fall from the ladder is not covered.

Initially, of course, it is said and often repeated that the section, being remedial, should be liberally construed. The Court of Appeals noted recently that Section 240(1) is to be construed as liberally as may be for the accomplishment of the purpose for which it was framed. *See Ross v. Curtis–Palmer Hydro–Elec. Co.*, 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993); *Lombardi v. Stout*, 80 N.Y.2d 290, 590 N.Y.S.2d 55, 604 N.E.2d 117 (1992); *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). By liberally interpreting the statutory terms "alteration" and "repair", the courts have expanded them to include situations wherein basic maintenance-type work was performed to a building even though no construction, demolition or renovation work occurred.

Such a construction would appear to mandate that every fall from a ladder would be covered by the section, but such a construction would render the qualifying language meaningless. Indeed, it seems generally accepted that maintenance is not covered by

the section. In *Cosentino v. Long Island R.R.*, 201 A.D.2d 528, 607 N.Y.S.2d 720 (2d Dep't 1994), a telephone company repairman was injured while splicing cables at a subway station. The trial court granted the worker's motion for summary judgment pursuant to Section 240(1). The Appellate Division reversed, stating:

> It is clear that liability under Labor Law Section 240(1) was not meant to apply to routine maintenance in a non-construction context. In view of the strict liability imposed by the statute and the fact that such liability is generally imposed only to guard against inordinate dangers, we find no reason to strain the language of the statute to encompass the routine activities involved with telephone service, which is *clearly distinguishable from the risks associated with the construction or demolition of a building.*

*Id.* In *Edwards v. Twenty–Four Twenty Six Main Street Associates*, 195 A.D.2d 592, 601 N.Y.S.2d 11 (2d Dep't 1993), plaintiff fell from a height while repairing dilapidated plywood shelves. The Appellate Division affirmed summary judgment to the building owner, holding that "Labor Law Section 240(1) was not meant to apply to routine maintenance in a non-construction, non-renovation context." *Id.*

On the other hand, Joblon has cited *Golda v. Hutchinson Enterprises, Inc.*, 632 N.Y.S.2d 364 (4th Dep't 1995) which states:

> Supreme Court properly granted plaintiffs' cross motion for partial summary judgment on liability under Labor Law § 240(1). James Golda (plaintiff) was installing a gas meter when he was injured; that activity constitutes an "alteration" of the premises within the meaning of the statute (*see Atwell v. Mountain Ltd.*, 184 A.D.2d 1065, 584 N.Y.S.2d 255; *Dedario v. New York Tel. Co.*, 162 A.D.2d 1001, 1003, 557 N.Y.S.2d 794). Although there is no proof that the ladder plaintiff was using was defective, he fell while working at an elevated work site as a result of the absence of adequate safety devices, and thus was entitled to partial summary judgment on liability under the statute (*see Ellis v.*

*Hammond & Irving*, —— A.D.2d ——, 629 N.Y.S.2d 889).

> Order unanimously affirmed with costs.

*Id.*

Some of the decisions turn on whether the risk is "elevation-related", *Genco v. City of New York*, 211 A.D.2d 615, 621 N.Y.S.2d 627 (2d Dep't), *leave to appeal denied* 85 N.Y.2d 806, 627 N.Y.S.2d 323, 650 N.E.2d 1325 (1995), a consideration which returns to the section's roots as a measure relating to the construction of buildings using, in the words of the title "Scaffolding and other devices for use of employees." To counter *Golda*, cited above, Solow cites *Giambalvo v. National Railroad Passenger Corp.*, 850 F.Supp. 166 (E.D.N.Y.1994), where the court found the plaintiff who had fallen off a ladder while replacing a burned out spotlight, had not been engaged in the type of "repair envisioned by the statute." *Id.*

■ To apply the section in these circumstances is to deprive the defendants of a defense of comparative negligence, and in effect, to make every fall from a ladder compensable in damages from the owner of the building. Such a result seems to extend the section beyond its appropriate reach. Consequently, it is determined that the installation of a wall clock is not the "repairing, altering ... of a building or structure," although it may well be a modification or extension of an existing system.

Therefore, the Joblons' motion will be denied, and Geller's motion for summary judgment that Section 240(1) does not apply will be granted.

### III. Summary Judgment Will Not Be Granted to Geller, Holding Joblon, Schwab, and Gordon to Be Special Employees

■ "[A] special employee is one who is transferred for a limited time of whatever duration to the service of another." *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557, 578 N.Y.S.2d 106, 108, 585 N.E.2d 355 (1991) (citation omitted). [A] person's categorization as a special employee is usually a question of fact." *Id.* (citations omitted). Although there is no requirement "that the

question of special employment inevitably go to a jury," *id.,* New York courts have been reluctant to decide the question unless "undisputed critical facts compel that conclusion and present no triable issue of fact." *Id.* (citations omitted). "Many factors are weighted in deciding whether a special employment relationship exists, and generally no one is decisive. While not determinative, a significant and weighty feature has emerged that focuses on who controls and directs the manner, details and ultimate result of the employee's work." *Id.* (citations omitted).

■ Although it is true that Geller was retained on a long-term basis by Avon and that Avon may have had at least some authority to direct the work of Geller employees, genuine issues of material fact preclude a finding of summary judgment. The record alleges that Geller equipment was used on the site, that Geller prepared daily invoices for Avon, and that Geller employees had discretion as to at least some of the details of the execution of their work. Although Gordon was based full-time on the Avon premises, and although Joblon and Schwab were there for ten consecutive days working on Avon matters, the other facts make it possible that a trier of fact could deem them not to be special employees of Avon.

Geller's motion to hold Joblon, Schwab, and Gordon to be special employees of Avon will, therefore, be denied.

### IV. Solow's Motion for Summary Judgment Will Be Granted as to Avon

■ Solow is entitled to summary judgment against Avon pursuant to well-established principles of indemnification. The right to shift the entire loss from one party to another may be based on express contract or implied obligation. *Bellevue South Assocs. v. HRH Constr. Corp.,* 78 N.Y.2d 282, 574 N.Y.S.2d 165, 579 N.E.2d 195 (1991). The express terms of the lease agreement between Avon and Solow provided that:

> tenant, [Avon], shall indemnify and save harmless landlord [Solow] and its agents against and from (1) any and all claims arising from ... (ii) any work or thing whatsoever done, or condition created (oth-

er than by landlord for landlord's or tenant's account) in or about the devised premises during the term of this lease ... or (iv) any negligent or otherwise wrongful act or omission of tenant or any of its subtenants or licenses or its or their employees, agents or contractors and (b) all costs, expenses and liabilities (including penalties, fines and reasonable counsel fees) incurred in or in connection with each such claim or action or proceeding brought thereon.

■ It is undisputed that Joblon was injured on Avon's leased premises in the course of performing work pursuant to Avon's request. Similarly, it is undisputed that neither Solow nor its agents were involved in the circumstances occasioning Joblon's presence on leased space. Accordingly, Solow is entitled to indemnification by virtue of its contract with Avon, and Solow's motion for summary judgment against Avon will be granted.

### V. Solow's Motion for Summary Judgment Against Geller Will Be Denied

As this Court has noted:

> A right to "implied indemnification" can exist even absent an *express* agreement creating a right to indemnification.... It arises when ' "[a] person ..., in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.' "

The inquiry thus becomes, under what circumstance "should [the duty] have been discharged by the other"? Interpreting New York law, the Second Circuit has distinguished between two sets of circumstances in which a right to implied indemnification may exist. The first is where the special nature of a contractual relationship between the parties gives rise to the right (the "implied contract theory"); the second is a tort-based right "found where there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other" ("implied in law indemnity").

*In re Poling Transp. Corp.*, 784 F.Supp. 1045 (S.D.N.Y.1992) (citations omitted).

■ Neither party nor the record suggests the existence of a contract between Solow and Geller. Any indemnification must, therefore, arise from implied in law indemnity. As our Court of Appeals has noted, implied in law indemnity "is designed to allocate the costs of negligence to the joint tortfeasor primarily responsible." *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986) (citations omitted). Although Geller has not alleged negligence on Solow's part, Geller denies its own negligence, pointing to Avon and Joblon. Because a reasonable trier of fact could find Geller not to have been primarily responsible, summary judgment cannot be granted on the issue of implied in law indemnity. Solow's motion will, therefore, be denied as to Geller.

### VI. *Avon's Motion for Summary Judgment Will Be Denied as to Geller*

■ As noted above in the discussion of Geller's motion seeking to hold Joblon, Schwab, and Gordon to be special employees, genuine issues of material fact exist regarding the degree of control exercised by Avon over the work of Geller employees. The apportionment of negligence thus remaining open to question, summary judgment cannot be granted on Avon's claim for indemnification by Geller.

Avon's motion for summary judgment will, therefore, be denied.

### *Conclusions*

All other arguments advanced by the parties have been considered and deemed unpersuasive.

For the reasons set forth above, the Joblons' motion is denied. Geller's motion for summary judgment that Section 240(1) does not apply to the facts of this case is granted. Geller's motion for summary judgment that Joblon, Schwab, and Gordon were special employees of Avon is denied. Solow's motions for summary judgment are granted as to Avon and denied as to Geller. Avon's motion for summary judgment is denied.

Submit judgment on notice.

It is so ordered.